JOHN R. BURROWS *vs.* NEHEMIAH M. GALLUP AND ANOTHER.

Where the owner of land has been dispossessed, a mere casual or stealthy entry by him does not disturb the adverse possession of the disseizor. His entry must be intended as an act of possession.

Where therefore the court charged the jury that a party who claimed a prescriptive right to a public landing must have excluded the public and every member of it, it was held that the charge was open to exception, as implying an actual exclusion of every member of the public from the premises, while it should have required only an exclusion from the possession.

Where a highway is laid out to navigable water and there terminates, the terminus may be regarded as presumably intended for a public landing as incident to the highway.

Where however a highway, running from place to place, is laid out along the shore of a navigable stream and in immediate contact with it for a considerable distance, the reason for the presumption does not exist.

The question in such a case depends on the circumstances, and is one of fact for the jury.

It seems that the statute (Rev. Stat., tit. 38, § 3,) which provides that no person shall acquire title by adverse possession to land belonging to a highway, does not apply to a public landing not part of a highway.

TRESPASS for entering upon a wharf on Mystic River, claimed by the plaintiff as his private property; tried to the jury in the superior court, before *Butler, J.,* on the general issue, with notice that proof would be offered that the locus was a public highway and landing.

On the trial it appeared that the wharf was erected by Enoch Burrows, the grandfather of the plaintiff, adjoining the traveled ·path of an ancient highway, and between that and Mystic River, opposite the family homestead. The acts charged, which consisted of the unlading and deposit of sea-

weed upon the wharf, were admitted, and the defence was that the wharf was built by Burrows on a public landing place, recognizing the rights of the public, for more convenient use by the public and himself; he then having a store and doing a mercantile business in the immediate vicinity. The plaintiff proved a continued use of the wharf by Burrows and his descendants, to the time of the supposed trespass. The defendants claimed to have proved that it was originally a landing place, that Enoch Burrows admitted it to be such, expressly when he built the wharf, and said that he built it for the accommodation of the public as well as himself, and afterward impliedly in a written communication to the town, and that it had always been used as such by the public when they had occasion to use it, and, among other purposes, for the purpose for which the defendants used it. The plaintiff denied that it was or ever had been a public landing place, and claimed to have proved that the landing place was below; that he had title to the land where the wharf was built; and if not, and if originally a landing place, that it was an easement distinct from the highway, and not embraced by the statute of 1809; and that he and those under whom he claimed had, by an exclusive possession, gained a title as against the public, notwithstanding that statute. Both parties requested the court to charge in conformity with their respective claims. The charge of the court was *pro forma* on all the points, and as follows on the point of title by adverse possession:—" The plaintiff claims that if a public landing place originally, yet if, since the wharf was built, he, and those under whom he claims, have been in the exclusive possession, they have destroyed the public right by fifteen years adverse user. If there was a landing place, and it was an easement distinct from the highway, it was not within the statute, and if they occupied exclusively for fifteen years they extinguished the public right. The plaintiff claims that he and his grantors have thus occupied, and that the user, so far as there has been any by the public, has been permissive; that permission was generally asked, and if not the public understood that the plaintiff and his grantors permitted the public to use it. The

defendants claim that it was not permissive ; that Enoch Burrows, when he built it, said that he did not intend to exclude the public, and that such was the import of his admission in the communication to the town. You will look at the writing in connection with the evidence, and say whether it related to this place. And you will look at all the evidence and say whether there has been an exclusion of the public, and whether the public use has been all permissive. In order to destroy the public right they must have excluded the public and every member of it. The defendants claim that a large number of persons have continued to use it, claiming it as a matter of right, and that there has been no fencing or actual exclusion, and that the plaintiff and his grantor never took possession intending to exclude the public. Have the public been substantially excluded from the place ? If so, the public have lost their rights ; if not, they could not lose them."

The jury returned a verdict for the defendants, and the plaintiff moved for a new trial for error in the charge.

*Hovey* and *Wait*, with whom was *A. F. Park,* in support of the motion.

1. The public have no right, either at common law or by statute, to use the soil of an individual adjoining navigable water as a landing place. *Ball* v. *Herbert,* 3 T. R., 253 ; *Blundell* v. *Catterall,* 5 Barn. & Ald., 268 ; *Pearsall* v. *Post,* 20 Wend., 111 ; *Post* v. *Pearsall,* 22 id., 425 ; Angell on Tide Waters, 178, 185, 189. Nor can they acquire such right by dedication, for dedication is predicable only of highways, streets, and other easements in the nature of highways. *Post* v. *Pearsall,* 22 Wend., 425. Nor by prescription, because prescription is a personal right, and the public can not prescribe for an easement. 3 Cruise Dig., 424 ; 2 Greenl. Ev., §§ 248, 540 ; 2 Bla. Com., 263, 264. Nor can the public in any way acquire the right, except through the action of the legislature. Custom may give to the inhabitants of a particular town or village this right ; but custom can not be pleaded in favor of the whole community. 2 Greenl. Ev., § 248. And individuals may acquire the right by prescription.

2. If the *locus in quo* ever was a landing place which the public had the right to use as claimed by the defendants, the provisions of the statute for preventing persons from acquiring title to public highways by adverse enjoyment do not apply to it. Rev. Stat., tit. 38, § 3.

3. To destroy such right of landing the occupation of Burrows need be such only as to substantially exclude the public from enjoying the same as a matter of right. To make the rule so sweeping as to require the exclusion of *every human being*, would prevent the acquisition of a title to places which had been used as public landings, as effectually as if there existed a statute applicable to landing places similar to the act of 1809 relating to highways, and the act of 1846 relating to railroads and canals.

4. Even if any individual did land there claiming that he had the right so to do as one of the public, the exercise of such claimed right would not prevent Burrows holding the premises by adverse possession against the public, but only as against the individual who so landed. Therefore if Gallup landed the sea weed on the *locus in quo* under a claim of right, it was a personal right merely and not a public one.

*Lippitt* and *Halsey*, contra.

1. A mere use of the *locus in quo* conferred no *exclusive* right so to use it. It was but the exercise of a *common* right. To acquire an exclusive right to that which before was public and common, it must be exercised to the exclusion of all others. A mixed use is not sufficient. 1 Swift Dig., 161; Washburn on Easements, 412, 413; *Nichols* v. *Gates*, 1 Conn., 318; *Chalker* v. *Dickinson*, id., 382; *Delaware & Maryland R. R. Co.* v. *Stump*, 8 Gill. & J., 479; *Collins* v. *Benbury*, 5 Ired., 118; *Rogers* v. *Allen*, 1 Camp., 309.

2. The party who claims the exercise of any right inconsistent with the free enjoyment of a public easement or privilege, must put himself on the ground of prescription, unless he has a grant from the government. 2 Hilliard on Real Property, chap. 60, § 11; *Arundel* v. *M'Culloch*, 10 Mass., 70; *Carter* v. *Murcot*, 4 Burr., 2164. And it is one of the

essential elements of a prescriptive right that it should have been enjoyed to the exclusion of all against whom it is claimed. Washburn on Easements, 96 ; *Kilburn* v. *Adams*, 7 Met., 33.

3. It appears from the whole charge that the jury were properly instructed on this point, so far as any claim of the plaintiff is concerned. The motion merely shows that the plaintiff proved " a *continued* use," not an *exclusive* one. The verdict then is clearly right under any view of the law.

4. The charge was only *pro forma*, to get the opinion of the jury on the character of the possession or use by the plaintiff. The judgment should be for the defendants, however the jury might find in regard to the possession. The highway was laid by " Mystic River side." The charge proceeds upon the theory that the public could lose the use of the *locus in quo*, so far as a right of landing was concerned, but not for the ordinary purposes of a highway. But " where a street is laid out bordering on a navigable water, it will be presumed that it was intended to be dedicated both for a highway and a landing. The navigable water is a highway ; and where in contact with this the easement of a street or highway is granted, the very location of the latter shows that it was designed for the purpose of loading and unloading freight, and landing passengers from the water. The dedication to the water *unites* the two easements, each of which is essential to the full enjoyment of the other." *Godfrey* v. *City of Alton*, 12 Ill., 29. This case is approved by the supreme court of Ohio. *Holmes* v. *Railroad Co.*, 8 Am. Law Reg., 729. The law is the same in England. *Peter* v. *Kendal*, 6 Barn. & Cress., 703. Such being the law, it is submitted that, as long as the public had a right to the use of the *locus in quo* as a highway, they had also the right to use it for a landing, which is only passing from one highway to the other. The plaintiff could acquire by occupancy a right against any individual to the fee of the land, but nothing against the public easement. *Read* v. *Leeds*, 19 Conn., 182.

PARK, J. Complaint is made of the charge of the court to

the jury as to what it was necessary for the plaintiff, and the parties under whom he claims title, to have done in order to extinguish the right of the public to the *locus in quo* as a public landing. The court instructed them " that in order to destroy the public right they must have excluded the public and every member of it." It is said that this language gave the jury to understand that, during the running of the statute, the entry upon the premises of any member of the public, without permission of the party in possession, would prevent the acquisition of a prescriptive right in the plaintiff, whether the entry was made for one purpose or another, and whether by stealth or otherwise. On the other hand it is said that the court, in a subsequent part of the charge, so qualified the language complained of, that the whole is rendered unexceptionable.

It was claimed by the plaintiff, and the court adopted the theory, that if the public had acquired a right to the locus for a public landing, it was such a right as could be lost by prescription. If this be true it is quite evident that the charge was calculated to mislead the jury in determining whether it was lost.

The first part of the charge is specific. It requires the exclusion of every member of the public from the premises. The latter part is more general, and only renders it necessary that the public should be substantially excluded. The first part is more comprehensive than the last. The last does not purport to have been given to qualify or explain the first; neither can it receive that construction. They are independent representations of the law concerning the same subject matter; and inasmuch as it can not be known which part of the charge was received by the jury as the law of the case, we are required to consider whether either part gives the plaintiff cause to complain.

A title by prescription is based upon a grant, conclusively presumed from an exclusive adverse possession of premises for a period of fifteen consecutive years. The owner must be ousted and the ouster must continue uninterruptedly for the prescribed period of time. But when a party is once dispos-

sessed it is not every entry upon the premises without permission that would disturb the adverse possession. He may tread upon his own soil and still be as much out of possession of it there as elsewhere. He must assert his claim to the land, perform some act that would reinstate him in possession, before he can regain what he has lost. It is evident therefore that an entry by stealth, under circumstances that go to show that the party claimed no right to enter, or an entry for other purposes than those connected with a right to enter, would not be sufficient to break the continuity of exclusive possession in another.

It is quite probable that the court intended to be understood by the language used in the first part of the charge, that every member of the public must be excluded from the *possession* of the premises; but in common parlance the language would be understood differently. It would be taken to mean a physical exclusion—an exclusion of mere casual entries upon the land, such as have been alluded to; and it may be that the jury found for the defendants solely on this ground.

But the defendants claim that judgment should be rendered in their favor, however the jury might find in regard to the possession. They say that the facts of the case show that the premises in question form a part of a public highway, at its junction with Mystic River, which is a navigable stream; and they claim that where a highway upon land comes in contact with navigable water, it is to be presumed that it was intended to have been dedicated to the uses of a highway and a public landing, and is not therefore the subject of prescription.

Where a highway is laid out to navigable water and there terminates, there could be but little reason to doubt that it was designed for the purpose of loading and unloading freight and landing passengers from the water; and it would thereby become a public landing as an incident to the public highway. But suppose a highway in running from place to place incidentally comes in contact with tide water, and runs along the beach for a considerable distance, on account of facility in its construction or other cause, would the whole length of

the highway bordering tide water, which might be many miles, *ipso facto* become a public landing, irrespective of its need or fitness for such a purpose, so that the owner of the soil could not appropriate any part of the shore to his own purposes although the fact was apparent that the public would not be thereby incommoded ? If the law is so a different principle prevails along the line of contact of these highways from that which governs each when separated.

It has been adjudged in many cases that the owner of the soil may do such acts upon his own land, within the limits of a public highway, as do not interfere with the public easement. *Bartlett* v. *Evarts*, 8 Conn., 523 ; *Burnham* v. ·*Hotchkiss*, 14 id., 312 ; *Hopkins* v. *Crombie*, 4 N. Hamp., 520. And there is abundant authority that the owner of land along the sea-shore may do in like manner with his soil covered by the sea, if navigation is not thereby incommoded. Angell on Tide Waters, 159 ; *East Haven* v. *Hemingway*, 7 Conn., 186 ; *Frink* v. *Lawrence*, 20 id., 118 ; *Groton* v. *Hurlbut*, 22 id., 178. The principle running through these cases, and many more that might be cited, is, that what remains, after giving the public full enjoyment of their rights, belongs to the owner of the soil.

And why should not the same principle govern in regard to a public landing arising from the contact of these highways ? Can any good reason be given in the case supposed, why the whole length of the contact should perpetually remain a landing, where the supposition is that a small part of it is capable of furnishing, and in fact does furnish, all the conveniences for the full enjoyment of the public right ? Can any thing more be asked for such a right than full enjoyment ? If so it must be to gratify the caprice of some erratic navigator.

It certainly would be a novelty in judicial proceedings if a prosecution could be sustained in such a case against the owner of the soil, who had erected a wharf for his own purposes at a place within the contact, but not required for any public use. Upon what principle the court could declare such erection a nuisance it is not easy to see.

It may be that public landings *prima facie* exist along the line of contact of all highways with tide water, as incident to such highways, as all water where the tide ebbs and flows is *prima facie* navigable, notwithstanding its unfitness for navigation in fact.    But such general principles of law are brought within the bounds of reason when undergoing judicial examination.   Judge Ellsworth, in giving the opinion of the court in one of the cases cited, says:—" It is time the public should understand that not every ditch in which the tide ebbs and flows through the extensive salt marshes along the coast, and which serves to admit and drain off the salt water from the marshes, can be considered a navigable stream ; nor is every small creek in which a fishing skiff or gunning canoe can be made to float deemed navigable ; but in order to have this character it must be navigable for some general purpose useful to trade or business."    And so it might be said in relation to landings of the class we are considering, that notwithstanding their *prima facie* character, they must be needed for public use, and must be restricted in extent to what is beneficial to the public.

The cases cited fully establish the doctrine that the owner of land along the sea-shore may erect a wharf adjoining his land, and enjoy it as his own, taking care not to interfere with navigation.    The enjoyment of a wharf necessarily requires a way, either public or private, connected therewith.    Suppose the former exists.    Now if the wharf no more interferes with the rights of the public in relation to a landing than it does in regard to navigation, the case clearly comes within the principle of those cases, and the party may enjoy his wharf.

The application of these principles to the case in hand is readily seen and easily made.    Although a public landing at the *locus in quo* may have existed *prima facie*, at the time the plaintiff's ancestor erected the wharf, still, whether it was needed for the purpose, so that the wharf could not become the property of the plaintiff, would depend upon circumstances, and is a question of fact to be determined by the jury.    The motion does not state the facts necessary to enable us to

---

---

decide this question, and to judge therefore whether substantial justice has been done by the verdict.

It was stated however by the counsel for the defendants, that the highway was laid out in 1698, running "by Mystic River side." If this was so it would seem that the highway runs along the bank of the river for a considerable distance and only incidentally comes in contact with it; for the highway was laid out at a time when it may fairly be inferred that there was not commerce enough on this stream to require the laying out of a highway for its enjoyment.

We can not say therefore that substantial justice has been done in the case, and a majority of the court are of the opinion that a new trial ought to be granted, and so we advise the superior court.

In this opinion HINMAN, C. J., and DUTTON, J., concurred. McCURDY, J., dissented. BUTLER, J., having tried the case in the court below did not sit.