DAVID W. WETMORE, Appellant, v. THE BROOKLYN GAS LIGHT COMPANY, Respondent.

The public have no right to use wharves erected by the owners of lands adjacent to the navigable waters of the East river, within the permanent water line of the city of Brooklyn, although such wharves extend beyond low water mark and were erected without the consent of the State. If the State sees fit to permit such structures to remain, no private individual has any right of entry upon them without the consent of the owners.

The title of the riparian owners to lands acquired by erecting and filling in wharves or bulkheads on the lands under water, as far as the permanent water line, under the authority conferred by the legislature (Laws of 1848, chap. 156; Laws of 1850, chap. 313), is not held subject to any right in the public to use the same.

Even if these acts are void, as appropriating public property to local or private purposes without the assent of two-thirds of the legislature, it is

. the right of the State, not of any individual, that is violated. Such a violation does not give to individuals the right to enter upon the lands for any purpose.

(Argued March 25th, 1870; decided June 22d, 1870.)

APPEAL from a judgment of the General Term of the Supreme Court in the second judicial district, ordered upon exceptions there heard in the first instance, for the defendant, dismissing the complaint.

The action is in the nature of an action on the case for damages for the exclusion of the plaintiff from the use of the defendants' bulkhead and premises, and is founded on a claim of the plaintiff (as one of the public) of a right to the use of the bulkhead and premises as a place for lading and unlading, and access from the water to the streets in the neighborhood, on the ground that the *locus in quo* was once land under navigable waters.

The premises in question, fronting on the East river, in the city of Brooklyn, are owned, inclosed and occupied by the defendants for their gas works, buildings and materials. The water front thereof is used by them for the purpose of landing coal and other merchandise required in the transaction of their business.

The complaint avers possession and occupation of the premises by the defendants, alleges that vessels are and were accustomed to land thereat, and claims damages for the refusal by defendants to permit the plaintiffs to unload and discharge at and upon their premises the cargoes of two freight barges, and to transport the same over their land and through their inclosures into the adjacent street.

This is claimed on the ground that the defendants' premises are below what was, at some former period, the line of low water; and that, having been erected on ground once covered with waters of a navigable river, they cannot be appropriated to private use, but must continue a highway, just as the water would be if it still flowed over the place.

The defendants, by their answer, deny that the same is, or

ever was, a public landing place, averring that the same is their inclosed private property, necessary for their separate use, and has for many years been exclusively used by them.

The defendants derive their title from the original owner of the upland and his grantees, and from such of them as were owners of the fast land at the time of the extensions constituting the present premises, under their general right as riparian owners to fill out to the exterior line prescribed by law, and under the acts of the legislature of 1836, chap. 484; 1848, chap. 156; and 1850, chap. 313, specially authorizing their structures.

It is admitted that their predecessor in title, John Jackson, owned down to the original line of low water; that he conveyed to John Ireland, whose executors conveyed to James B. Clarke, under whom, through the mesne conveyances recited in the case, the defendants now hold. These conveyances include the premises in question.

The premises were held and occupied for the purposes of a ferry, from 1825 to 1853, when they were conveyed to the defendants, who have since occupied and used them for their gas works. The whole was inclosed by fences at least as early as 1827.

The place to which the plaintiff came with his barges, and on which he claimed to discharge their cargoes, and over which he claimed to transport the same, is within the line to which the riparian owners were authorized to dock out and reclaim the land under water, by virtue of the several acts of the legislature above cited. The action was tried at the Kings county circuit, March 12th, 1863, before Mr. Justice SCRUGHAM and a jury. The complaint was dismissed on the whole evidence, and the exceptions taken by plaintiff were directed to be heard in the first instance at General Term.

Judgment was rendered March 8th, 1864, for defendant, dismissing the complaint. The plaintiff appeals to this court.

*Stephen P. Nash,* for the appellant, argued that the wharf, being within the port of New York and below low water

mark, was subject to the right of moorage and wharfage in respect to all vessels lawfully using said port. On this point he cited City Charter, Kent's ed., 58; 1 Stat. at Large, 630; Hale *de portibus maris*, Ch., 1, in Harg. Law Tracts, 46'; id., chap. 6, 1 Harg., 72; *People* v. *Vanderbilt* (26 N. Y., 287, 292–3); *Pollard* v. *Hagan* (3 How. U. S., 212); *Gilman* v. *Philadelphia* (3 Wall, 713); Woolrych on Waters, 194; *Gould* v. *Hudson R. R.* (2 Seld.; 522, 544); *Lansing* v. *Smith* (4 Wend., 9); *Heaney* v. *Heaney* (2 Den., 625); *Bolt* v. *Stennett* (8 T. R:, 606); *Beardslee* v. *French* (7 Conn., 125). Defendants did not establish any right to maintain the wharf to the exclusion of the public, by showing that they had succeeded to the ownership of the upland, citing *Dutton* v. *Strong* (1 Black., 22, 32–3); *Gould* v. *H. R. R.*, and *Lansing* v. *Smith*, *supra*; *Rose* v. *Mills* (4 M. & S., 101); *Pierce* v. *Dart* (7 Cow., 609); *Harrower* v. *Ritson* (27 Barb., 301); *Fort Plain Br. Co.* v. *Smith* (30 N. Y., 44). The rights of docking out and filling in land under water, under the acts of the legislature, were subject to use by the public. This could not be granted for exclusive or private use. (Amer. Jurist., 37, p. 121, vol., 19; *Darlington* v. *Mayor*, 31 N. Y., 164; 2 Kent's Com., 339.) Certainly not, except by two-thirds vote. (Art. 1, § 9 of the Constitution.) If the act conveyed title, it was to support the franchise and the grant was for public use as well as private benefit. (1 Redf. on Railways, 228, 4th ed., chap. 11, § 1; *Wilson* v. *Smith*, 10 Wend., 324; 2 Bl., 20, 138; *Wiswall* v. *Hall*, 3 Paige, 313, 318; *Lansing* v. *Smith*, *supra*; 4 Kent, 467; Co. Litt., 121, 6; Hale, *de portibus mar.*, 70, 71; *The Jordan, &c., Co.* v. *Morley*, 23 N. Y., 552; *People* v. *Lambur*, 5 Den., 1; *Mills* v. *St. Clair Co.*, 8 How. U. S. 569; *Radway* v. *Briggs*, 37 N. Y., 256; *People* v. *Albany, &c., R. R. Co.*, 24 N. Y., 261; S. C. in Sup. Ct., 11 Abb., 136.) The acts of the legislature assume that all such wharves are subject to public use. ( *Vanderbilt* v. *Adams*, 7 Cow., 349; *Comrs. of Pilots* v. *Clark*, 33 N. Y., 251; *Taylor* v. *Atlantic Ins. Co.*, 37 N. Y., 275, 279, 281

*Martin* v. *Waddell*, 16 Peters, 367 ; 1 Hoffm. Rights and Duties of the Corp., 171.)

*Benjamin D. Silliman*, for the respondent, insisted that the allegations of defendant's exclusive possession in the complaint, admit a fee in the defendants, citing *Day* v. *Alderson* (9 Wend., 223) ; 1 Cow. & Hill, 353 ; 1 Phil. & Amos Evi., 472 ; 2 Phil. Evi., 282 ; *Jackson* v. *Murray* (5 Cow., 200) ; *Hill* v. *Draper* (10 Barb., 454) ; Best on Presump., 145, 31 Law Lib. N. S. ; Adams on Ejec. Am. ed., 1821, 252–3 ; *Dickinson* v. *Smith* (25 Barb., 102–6) ; *Jacks* v. *Hillsborough* (1 Dev. & Batt., 177) ; *Sherry* v. *Fricking* (4 Duer, 452). Certainly as against the plaintiff, a stranger. (*Matson* v. *Cook*, 4 Bing. N. C., 392 ; *Holmes* v. *Kneeland*, 11 Ad. & Ell., 52 ; *Althouse* v. *Rice*, 4 E. D. Smith, 347 ; *Willard* v. *Walter*, 17 Wend., 257 ; *Bogart* v. *Haight*, 20 Barb., 251.) He has shown no title or right in himself. If the structure were a *purpresture*, no one but the State could disturb it, but it was authorized by act of the legislature and is neither a *purpresture* nor a nuisance. (*Harrison* v. *Thomas*, 9 Barb., 350 ; *Plant* v. *L. I. R. Co.*, 10 id., 26 ; *Williams* v. *N. Y. C. R. Co.*, 18 id., 222 ; *People* v. *Shaw*, 34 id., 494.) Riparian owners have the right to reclaim, dock out and strengthen their front, if it can be done without impairing public rights, by both the common and the civil law. (Co. Litt., 48, b ; 3 Kent, 431 ; *Blundell* v. *Catterall*, 5 B. & Ald., 268 ; Angell on Tide Water, 171, *et seq.* ; *Ball* v. *Slack*, 2 Whart., 538 ; *Lay* v. *King*, 5 Day, 72 ; *Com.* v. *Shaw*, 14 S. & R., 9 ; *Bowman's Devisees* v. *Wathen*, 2 McLean, C. C. R., 376 ; *Harrison* v. *Sterrett*, 4 H. & McH., 540 ; *Boston & Rox. Milldam* v. *Newman*, 12 Pick., 467 ; *Bell* v. *Hull & Selby R. R.*, 6 M. & W., 599 ; *Wilson* v. *Inloes*, 11 G. & J., 351 ; *Fleet* v. *Hedgeman*, 14 Wend., 42 ; *Decker* v. *Fisher*, 4 Barb., 592 ; 2 Kent., 339 ; Prudhon *Traité du* Dom. Pub. (Dig., 1834) ; *Ledyard* v. *Ten Eyck*, 36 Barb., 102 ; Wheeling Bridge Case, 13 How. U. S., 519 ; *Gilman* v. *Philadelphia*, 3 Wall., 713 ; The Passaic Bridge, id., 782 ; Dig. Lib., 8, § 8 ; id., Lib., 43,

Tit., 15, § 1; *Gough* v. *Bell*, 3 Zabr., 624; *O'Niel* v. *Annett*, 3 Dutcher, 390; *Fitchburgh Railroad* v. *Boston, &c., Co.*, 3 Cush., 58; *Keyport Steamboat Co.* v. *Farmers' Transportation Co.*, 18 New Jersey, 516 ; *Stover* v. *Freeman*, 6 Mass., 435; 2 Danes Abr., 693, 4; *Sale* v. *Pratt*, 19 Pick., 191 ; *Austin* v. *Carter*, 1 Mass., 231; *Com.* v. *Charlestown*, 1 Pick., 180; *Parker* v. *Bates*, 19 id., 235 ; *Ingram* v. *Wilkinson*, 4 id., 268 ; *Lapish* v. *Bangor Bank*, 8 Greenl., 85 ; *Moore* v. *Griffin*, 9 Shep., 350; *Burroughs* v. *Gallup*, 32 Conn., 493 ; *Chapman* v. *Kimball*, 9 Conn ; *Rice* v. *Ruddiman*, 10 Mich., 125.)   It is only when navigation has been injured, or a positive statute violated, that the State has interfered.   (*Attorney-General* v. *Richards*, 2 Anstr., 603; *Same* v. *Philpot*, id., 607 ; *Same* v. *Cleaver*, 18 Ves., Jr., 218 ; *Rex* v. *Ward*, 4 Ad. & Ell., 384; *Rex* v. *Russell*, 6 Barn. & Cress., 566; *Bristol* v. *Morgan*, 2 Anstr., 607 ; *Attorney-General* v. *Parmenter*, 10 Price, 378; *Same* v. *Burridge*, id., 350; *Same* v. *Johnston*, 2 Wils. Ex. R., 87 ; *Same* v. *Forbes*, 2 Myl. & Cr., 123 ; *Ripon* v. *Hobart*, 3 Myl. & K., 169; *Com.* v. *Crowningshield*, 2 Danes Abr., 697; *Mohawk Bridge Co.* v. *Utica, &c., Co.*, 6 Paige, 554; *Attorney-General* v. *Cohoes*, 6 Paige, 133 ; *Com.* v. *Wright*, Mass. Am. Jur., No. 6, 185.)   The newly made land became part of the upland, with all rights of ownership incident to the latter.   (*People* v. *Kelsey*, 38 Barb., 269 ; *Udall* v. *Trustees of Brooklyn*, 19 John., 175 ; *Stryker* v. *Mayor*, id., 179 ; *Luke* v. *Trustees*, 43 Barb., 54 ; *Mumford* v. *Whiting*, 15 Wend., 384; *Houghtaling* v. *Houghtaling*, 5 Barb., 379 ; *Brown* v. *Woodworth*, id., 550; 2 Washb. on Real Prop., 663, (623), and cases cited.)   The defendants have good title as by accretion (2 Kent, 428, and cases cited); *Attorney-General* v. *Chambers* (5 Jur. N. S., 745); *Deerfield* v. *Ames*, (17 Pick., 41); *Adams* v. *Frothingham* (3 Mass., 352); and the right of accretion has been enlarged by the legislature. Undisturbed possession for over forty years, precludes the State and individuals from claiming.   (*Wendell* v. *Van Rensselaer*, 1 John. Ch., 354; *Storrs* v. *Baker*, 6 id., 160;

*Town* v. *Needham*, 3 Paige, 553; Stor. Eq., Jur., 385; *Canning* v. *Gould*, 16 Wend., 531; *Moon* v. *Hawson*, 3 Barn. & Cress., 332; Gale & Wheat. Law of Easem., 259–262; *Bell* v. *Gough, supra*.) None but the State can object to defendant's title, on the ground of unconstitutionality of the acts, and it only by a direct proceeding. (*Parmelee* v. *Osw. & Syr. R. R.*, 7 Barb., 599; *Williams* v. *Sheldon*, 10 Wend., 654; *Hoofnagle* v. *Anderson*, 7 Wheat., 212; *Jackson* v. *Marsh*, 6 Cow., 281; *People* v. *Manson*, 5 Den., 389; *Field* v. *Seabury*, et al., 19 How. U. S., 332.) And the long usage sanctions the construction that a two-thirds vote is not necessary to such grants. (*Stuart* v. *Laird*, 1 Cranch, 309; 3 Pick., 517; 10 Wheat., 62; *Rogers* v. *Goodwin*, 2 Mass., 475; *Attorney-General* v. *Bank of Cape Fear*, 5 Iredell, 71; *Kenison* v. *Hill*, 1 Louisiana, 469; *Packard* v. *Rutland*, 17 Mass., 132; *Morison* v. *Barksdale*, Harp., 101; *Troup* v. *Haight*, Hopk., 268; *Jackson* v. *Gumeer*, 2 Cow., 567; *Smith* v. *Jersey*, 2 Brod. & Bing., 506.)

Grover, J. If the plaintiff had the right to fasten his vessel to the wharf in the possession of the defendants and unload the cargo thereon, and transport it from thence in vehicles to the street in the rear thereof, he was entitled to recover, and the judge erred in refusing to submit the case to the jury and dismissing the complaint. The ruling of the judge cannot be sustained upon the ground that the plaintiff did not tender or offer to pay the customary wharfage, for the reason that the defendant put the refusal to permit him to unload the cargo upon the ground that the wharf was its private property, and that the plaintiff had no right to discharge his cargo thereon without its permission. The question to be determined is, whether the wharf was the private property of the defendant, from which, as such, it had the right to exclude the public from any use, either with or without the payment of wharfage, or whether the public had the right to its use for loading and unloading vessels. The plaintiff entirely failed to show any dedication of the wharf to public

use either by the defendant or any of its predecessors in the title. The only foundation of right, that can be relied upon by the plaintiff to use the wharf, arises from the fact of its construction in the channel of the East river, upon the east or Brooklyn side, below low water mark, where the public had, before the filling in for the purpose of the wharfage, enjoyed the right of navigation. There was no pretence that the structures of the defendant constituted any obstruction to the free navigation of the river. These structures were wholly within the water line of the city of Brooklyn, as established by the legislature in 1836, Laws of that year, chapter 484. The defendant showed a perfect title to the upland to high water mark, adjacent to the wharf, and also to the land between high and low water mark. The public never had any right of landing upon these lands of the defendant, or of crossing or in any way using the same for any purpose. The public right upon the Brooklyn side was confined to that of navigating the river. How the right of navigation should confer upon the plaintiff any right to the use of these lands, it is difficult to discover. But the wharf is constructed in the channel below low water mark. The title to this land was in the State, and the defendant clearly had no right to fill in or erect any structures thereon as against the State without its consent, and the State could, if they were so constructed, compel their removal by the defendant.

If the State sees fit to permit the structures to remain, what right has the plaintiff to complain? He is in no respect injured thereby. He can enjoy his right to navigate the river in as free and ample a manner as before. He had no right to unload or load his vessels at this place before, and has none now. He is in no way injuriously affected by the structures. There was no express trust attached to the lands between high and low water mark on the Brooklyn side of the river, when granted to the city of New York, in behalf of the public. I see no substantial ground upon which any such trust can be implied. There was no such trust attached thereto in the grant of these lands by the city to those under

whom the defendant claims. It does not appear that the acts of 1848 and of 1850, chapters 156 and 313, giving to the several owners of real estate fronting on the water in the city of Brooklyn, their heirs, &c., the right to erect and maintain bulkheads, &c., and to fill in the same on the lands under water in front of their lands respectively, so far into the East river as the permanent water line established by law for the construction of bulkheads, were passed by a two-third vote. It must be assumed, therefore, that they were not so passed. (Laws, 1842, chap. 306.) It is argued from this, by the counsel for the plaintiff, that it must be assumed that the legislature only intended, by the acts giving to the owners the right of erecting bulkheads, &c., to confer a franchise upon such owners to construct wharves, subject to the use of the public for commercial purposes, with the right of exacting the payment of the customary charges from those using them, and not to give an absolute title to such owner to the structures and the lands acquired by such filling in. The answer to this is, that there is nothing in the acts showing an intention to confer a franchise or a title subject to such rights in the public. If such had been the intention, the legislature would so have plainly declared, as this would have conferred new rights upon the public, not only upon the land gained by the shore owner by the filling in, but also upon the land upon the bank to which he already had title, as the public in the present case could not enjoy the right claimed without the use of a portion of the latter. If there had been an intention to confer the right claimed upon the public, the right of erecting the structures and filling in would have been given upon the condition that the public should not only have the right to use the structures and the land acquired by the filling, but also the shore lands of the owners to an extent sufficient to make the right available. The absence of any provision conferring any right upon the public to use any portion of the structures or land made by filling in, or that upon the margin, is conclusive that the legislature did not intend to confer any such right. It is argued by the counsel

for the appellant, that if the acts are construed so as to give an absolute title to the structures erected and the land made by filling, pursuant to the act, they are in conflict with section nine, article one of the Constitution of the State. That section provides that the assent of two-thirds of the members elected to each branch of the legislature shall be requisite to every bill appropriating the public moneys or property for local or private purposes. The fee of the land in the channel of the river was in the State, prior to the passage of the acts in question, and the position of the counsel is, that if, when filled in, pursuant to these acts, the fee vested in the shore owner, it was an appropriation of the land to private use. This question has been ably and elaborately discussed by the counsel upon both sides. But a decision of the question is not necessary in this case. If the acts are void, it is the right of the State, not that of the plaintiff, that is violated. If the respondent is in possession of land, the fee of which is in the State, it has its remedy. This gives the plaintiff no right of entry upon such land for any purpose. A full discussion of the difference as to titles of shore owners upon the New York and Brooklyn sides of the river, will be found in the opinion of the Supreme Court in *Wetmore* v. *The Atlantic White Lead Co.* (37 Barb., 70). The judgment appealed from must be affirmed with costs.

All concur for affirmance, except LOTT, J., who does not sit.

Judgment affirmed.