### HARPER *v.* WILLIAMS *et al.*

*(Supreme Court, Special Term, Queens County.   July 18, 1884.)*

WHARVES—FRANCHISE TO MAINTAIN PUBLIC DOCK—WHAT IS.

   Act N. Y. 1883, granting to Charles B. White authority to erect docks for commercial purposes, upon certain land under water adjoining the grantee's upland property, and to collect, from persons using such docks, reasonable dockage, to be regulated by legislature, confers on the grantee and his successors a franchise to maintain such docks subject to the general use of the public, upon the payment of reasonable dockage.

On motion to dissolve an injunction.

The opinion in this case having never been published, and being referred to in *Smith* v. *Berndt, post,* 108, it is printed here to supplement the latter case.

*Moore, Law & Sanford,* for plaintiff. *Wm. Clarke Roe,* for defendants.

CULLEN, J. It is clearly the settled law that a pier erected into navigable waters is not necessarily public. *Dutton* v. *Strong,* 1 Black, 33; *Wetmore* v. *Lead Co.,* 37 Barb. 70. In the former case it is said: "Piers or wharves may be private or in their nature public; that is, the owner may have the right to the exclusive enjoyment of the structure and to exclude all other persons from its use, or he may concede to others the privilege of landing their goods or mooring their vessels there, upon payment of a reasonable compensation as

wharfage. Whether they are one or the other may depend upon several considerations, involving the purposes for which they were built, the uses to which they have been applied, and the place where located." The plaintiff's right to an injunction, therefore, depends upon the determination of the question whether his pier is a private or public one, and unless it is clearly shown to be the former, he is not entitled to that writ, at least until the trial of the cause.

I doubt the claim that this pier is private. Its location is at the foot of a public highway. "When a public highway is laid out, its termination is presumed to be a public landing." Gould, Waters, 215; *Burrows* v. *Gallup*, 32 Conn. 493. So it was held in *People* v. *Lambier*, 5 Denio, 9, that as to any structure erected in the river at the foot of any existing street, the public right of way would continue over it to the water. This principle was recognized in *Wetmore* v. *Lead Co.*, *supra*, where Judge EMOTT, commenting on the case last cited, says: "The inference from this decision, as from the whole concert of authorities, is that in such cases the only access of the public to navigable waters is by the existing highways upon land, or their direct continuation or prolongation." It may be that in this case the highway did not go to the water. But the evidence is not clear either way.

2. A pier that would otherwise be private may become public by dedication or use. There is some evidence in the affidavits tending to establish such to be the case with this pier.

3. While I do not find that grants similar to the plaintiff's have ever been construed by the courts. I am of the impression that all piers constructed under such grants would be public. This grant is totally different from the grants in the case of *Wetmore* v. *Gas-Light Co.*, 42 N. Y. 384. In that case there was a grant to the adjacent owner to fill in and reclaim the land under water. But this grant is not of the land, but for the purpose of commerce, to erect a dock or docks, and to collect reasonable and accustomed dockage from persons using the same. This would seem to contemplate a general use by the public. For these reasons I am of opinion that plaintiff has not the right to exclude any vessel, for which reasonable wharfage is tendered, from landing at the pier; and the injunction heretofore granted must be dissolved, with $10 costs, to abide the final determination of the action.

### ON THE MERITS.

#### (April 6, 1885.)

BARTLETT, J. The principal issue in this suit is the question whether the steam-boat wharf at Sand's point is a public or private dock. In 1853 the people of the state of New York granted to Charles B. White, for the sole and express purpose of promoting commerce, the power and authority to erect any dock or docks that should be necessary to promote the commerce of this state, upon certain land under water, which adjoined the upland property of the grantee at Sand's point, and also authority to collect from persons using such dock or docks reasonable and accustomed dockage, to be regulated by the legislature. Shortly afterwards Mr. White built a wharf upon the land under water, described in the grant. Up to that time there was no highway leading to the place where the wharf was erected. The first road to the shore at this point appears to have been laid out in 1858. The proposition, therefore, that the dock is public because originally built at the foot of an existing public highway is not sustained by the proof. The wharf was there before the highway. The plaintiff in the present action has succeeded to the rights of Mr. White under the state grant, and contends that he may lawfully exclude the defendants, or any body else, from using the dock which he has built in place of that originally erected by his predecessor in title. The question is not whether he may regulate the use in a reasonable manner, but whether he may absolutely prohibit any public use whatsoever, if he sees fit.

In the case of *Wetmore* v. *Gas-Light Co.*, 42 N. Y. 384, the court of appeals held that there was no public right to the use of wharves erected under a statute, (Laws 1848, c. 156,) whereby certain persons were authorized "to erect, construct, build, and maintain bulkheads or wharves, and to fill in the same on the lands under water in front of their lands in the city of Brooklyn." "If there had been an intention," argued the court, "to grant the franchise subject to such a use, the legislature would so have plainly declared, as this would have conferred new rights upon the public, not only upon the land gained by the shore-owner by the filling in, but also upon the land under the bank to which he already had title," without using which, the right to use the wharf would not be available.

. I should have no difficulty in coming to the conclusion that there was no public right of use in the present case if the grant, upon which this plaintiff relies, contained nothing more in substance than the legislative grant which was passed upon in *Wetmore* v. *Gas-Light Co.* Here, as there, the authority is conferred to build wharves, and fill in the same, on certain lands. Nothing was said in that case about promoting the purposes of commerce, but it may be conceded that it is not essential to that end to keep a public wharf. See *Canal Co.* v. *Lawrence*, 2 Hun, 163, under the special statute relating to the use of piers in the city of New York, (Laws 1875, c. 249.) Many of these structures are occupied exclusively by private corporations, and yet it cannot be doubted that the commerce of New York state is promoted by such exclusive occupation.

The grant in the case at bar, however, in addition to authority to erect any dock or docks for commercial purposes, expressly confers "authority to collect from persons using such dock or docks reasonable and accustomed dockage, to be regulated by our legislature." It seems to me that these words, when considered with reference to the rest of the language employed in the grant, necessarily import a public use. They would be wholly needless, and, indeed, without meaning, in an instrument intended to bestow a private franchise such as would empower the grantee to exclude at will any and all persons from the structure. Although no highway had been laid out to the shore at this point when the grant was made, the commissioners of the land-office may well have contemplated the probability that a public road leading thither would be opened in the future, in which event the right to use the wharf would become, as apparently it has become, important and valuable to the public. This view has occurred to me in considering the suggestion of the learned counsel for the plaintiff that it would be absurd to give the public the right to use a wharf when they had no right to use the adjoining upland. Irrespective, however, of the reasons which may have actuated the state authorities, I think it was their intention, as manifested by the language of the grant under consideration, to confer upon the owner of the upland, and his successors in interest, merely a franchise to build and maintain a dock or docks at Sand's point, subject to the general use of the public, upon the payment of reasonable and accustomed dockage.

The defendants cannot be prevented from availing themselves of the right belonging to the public at large thus to use the wharf. They are therefore entitled to judgment in their favor, dismissing the complaint, with costs.