Barker, J.
The defendant’s docks and inclosed premises were its private property, and their use, control and management was completely under its own orders, rules and regulations. This was so held upon the trial by the learned judge, and no contention to the contrary is made by the *367 respondent on this appeal. "Unless the plaintiff had the consent, express or implied, of the defendant to land his goods upon its docks, then he was a trespasser, and the act of the defendant in ordering them away and placing them upon the steamboat which landed them thereon, was not wrongful and would not amount to a conversion.
But the plaintiff contends that he had a license to land the goods upon the dock and to cart the same across the grounds passing out of the gate leading to the highway near his store, and at the time the goods were landed this license had not been revoked nor in anywise limited. The plaintiff’s right to recover is made to depend entirely upon the truth of this claim.
The jury were instructed, in substance, that unless the defendant had granted to the plaintiff consent and permission to land his goods upon the dock, and the same was unrevoked, the plaintiff could not recover; that the docks were the defendant’s private property, over which it had absolute and unqualified control. The first inquiry then is, had the defendant, prior to the time the goods were landed, given its consent that the plaintiff might land goods thereon for the purpose of being transported through the inclosure to his own store? We think the evidence tends to prove the granting of such permit, and was sufficient to require the submission of that question to the jury, and their finding in support of the plaintiff’s contention is not against the weight of evidence. The fact was undisputed that a previous consignment by the plaintiff of goods of the same character and by steamboat, had been landed upon this dock and carried over the grounds to his own store; that this was done with the knowledge of the defendant’s general superintendent and the drayman, who was the defendant’s own servant, and received pay therefor. There is some evidence that other parties outside of the inclosure, and upon the highway upon which the defendant’s store is situated, received and shipped goods from this dock without any objection or protest by the defendant’s agents, who had charge of the premises.
The defendant secured the privilege of erecting these docks adjacent to its own lands, by a grant from the state for the purpose of promoting the commerce of the state, and it contains an exception as follows:
_ “Excepting and reserving to all and every of said people, the full and free right, liberty and privilege of entering upon and using all and any part of the above-described premises in as ample manner as they might have done had the power and authority not been given, until the same shall have been actually appropriated and applied for the purposes of commerce by erecting a dock or docks thereon, or for some beneficial enlargement of the same by the adjacent owner.”
It is conceded in this connection and for the purposes of *368 disposing of the questions as now presented, that the defendant under this grant, on erecting the docks, acquired the full right and privilege of controlling and managing the same as its own private property and to exclude any one of the public from landing thereon his own private property. Wetmore v. Brooklyn Gas Light Co., 42 N. Y., 384.
In view of the large amount of business annually transacted upon these docks and its nature and character, they may be treated,-so far as the rights of the public are concerned, very much as docks located upon navigable waters at commercial centers. We do not intend to hold, in disposing of this appeal, in view of the nature and character of the use to which the defendants grounds are devoted, and in view of the fact that no highway is laid out over the same, that there would be an implied license on the part of any one of the public to land goods upon this dock, for the purpose only of being transferred across these grounds to a place outside of the inclosure, but it is referred to as evidence in support of the plaintiff’s position, that he had a license to land goods at this dock to be carried over the premises to his own store. Without other evidence than the grant, it may be said, that a license could not be inferred; that the public might have the right to land goods for the sole purpose" of being carried out of the defendant’s inclosures.
It is a general rule of law that there is an implied license to enter upon a dock, of the same nature which the keeper of a tavern holds out to the public to come into his house, and in Heaney v. Heeney (2 Denio, 625), where the question was up, the court said: “That there is a license implied by law, to all persons navigating public waters, to occupy such erection as the dock in question in the manner and for the purposes contemplated by the owner, and for which they are constructed; and that it was not necessary for the plaintiff in this case to make an express application to the owner for permission to do so. The keeping such dock like an inn confers a general license to all persons to occupy it for lawful purposes. The mind of the owner in such cases is presumed to assent to such acts.” Without a notice to the contrary we think that the goods might be consigned by the owner to this dock in due course of trade, -and there landed for the purpose of being taken away by another boat to be transported- to another point on-the lake for the convenience of the owner. If one is induced to enter upon premises of another by any invitation, allurement or inducement of the owner either expressed or implied, he is not a trespasser. Converse v. Walker, 30 Hun, 596, and the cases there cited.
The next question is allied with the one just considered, *369 and that is whether the license had been revoked at the time the goods were landed. This occurrence happened the day after the gates had been closed for the season 1881, and there is no direct proof that the plaintiff was aware of that circumstance when he shipped the goods. The other evidence upon which the defendant relies was given by its own agents, Mr. Warren and Mr. Seymour. The former was the defendant’s general superintendent and the latter was a cartman in the defendant’s employ and was at the dock when the goods were landed. The jury were justified in the conclusion that Seymour saw the goods landed and made no objection until after the boat had left for Mayville. The plaintiff was not with the goods. •
Seymour testified: “I was acting under Mr. Warren, the superintendent of the grounds; I recollect the transaction referred to; my business was draying, hauling goods from the dock, and when there was not anything of that kind, such work as Mr. Warren might set me at; I was in his employ drawing goods around the grounds; I had charge of the docks there; I recollect the occasion of these goods being landed; at that time we had kept the gates closed for a short time when not using them in passing through them; we had a gateway for the passage of property; there was another gateway for the passage of persons for entrance and exit; I had delivered some goods while at work for Mr. Warren across the grounds for the plaintiff; that was not what Mr. Warren employed me for.” He then testified that Mr. Warren gave him instructions not to have any goods passed across the grounds that belonged to the people out side, and that subsequently he told Mr. Davis what Mr. Warren had said. “It might have been a week or perhaps ten days before this transaction, or such a matter; I told Mr. Davis that Mr. Warren said he wouldn’t allow any goods to be taken across the grounds to these people out side; I don’t remember that Davis made any reply at that time; after that, and before this transaction, I had another talk with the plaintiff; he had a few things come to the dock and he talked to me about drawing them; I told him what Mr. Warren had said, that he was not agoing to allow those people outside to take goods across the inclosure, and he replied that he and Mr. Warren were on good terms, and that was more for,,other parties; * * * I put them in my wagon; there was very few of them, and I took them up; we went by the Palace hotel (on the grounds), and there I saw Mr. Warren, who told the plaintiff that those were in and to go on with, them this time, but the thing must never be repeated, or words to that effect.” On •his cross-examination the witness expressed some doubt as *370 to the language which'he used in informing Mr. Davis that he would not be permitted to cart any more goods across the grounds.
On the former trial of this action Mr. Warren was sworn as a witness, and at the time of the trial under review he was deceased and his evidence was read, and we quote largely from his evidence for the purpose of presenting in this connection the evidence upon which the decedent relies for the purpose of estabhshing a revocation of the license. “Within the grounds there were, in 1881, a number of cottages; a large number of persons, a large number of goods landed at these docks to go upon these grounds; these docks were built for the accommodation of the grounds, and not for anybody else, only the patrons of the grounds; these goods were landed at the upper docks; the one at the extreme point; Mr. Seymour notified me of the goods being there; I told the captain to take them away; Seymour had charge of the docks; he hauled the packages to the cottages; I gave him directions concerning this plaintiff and his associates; I think I notified these men not to have any more goods brought there, nor to take them across the grounds; I had myself given personal notice to Mr. Hartwood, and I think I had Mr. Davis, but I would not be positive about it; I had-no knowledge of the plaintiffs carrying goods across the premises; I had known of Mr. Hartwood’s carrying goods across there in one instance, and I forbade him at that time from carrying any more; I had not given Davis any permission to take goods across the -grounds'at that time; I had no knowledge that while these goods were on the dock notice was given Davis that they were there; I was there when the boat returned; I saw the goods there and ordered them away; I had exclusive control of those grounds for the association, and no one besides myself assumed to have any control.” The quotations present all the evidence that bear upon the question of notice to the plaintiff of the revocation of the license.
The plaintiff, as a witness, testified that “Mr. Seymour did not notify me that I could have no more goods loaded at that dock prior to the time of the arrival of these goods; Mr. Warren never gave any notice to me; Warren did not have any communication with me while riding with Seymour; I did not testify on the former trial that Mr. Warren gave me notice not to draw any more goods across the grounds.” And he further testified that Mr. Seymour stated to him that Mr. Warren had given him notice not to draw any more goods across the grounds for him.
The court could not rule upon this conflicting evidence, and in view of the contradictory circumstances, held as a matter of law that the license had been revoked. It was a *371 fair question for the jury, and it became the duty of the trial court to submit that question to their consideration. The jury having found both of these questions in favor of the plaintiff, he was not a tresspasser upon the defendant’s premises in ordering these goods to be delivered upon the defendant’s docks. The act of Mr. Warren, in ordering these goods back upon the steamboat, when it landed at the dock on its return trip, was in law a conversion, and, as he represented the defendant, and was acting in the line of his duty, it is liable for his torts in this respect. The steamboat had discharged all the duty it owed the plaintiff as carrier by delivering the goods at the place to which they were consigned, and the relations of shipper and carrier were terminated when the boat left the dock, and when she returned the defendant’s agent caused the goods to be delivered into her possession and placed under the control of those who were' then strangers to the plaintiff, and between whom there was no contract relation whatever concerning these goods. Upon the facts as found by the jury, the goods had been delivered upon the defendant’s premises with its consent, and it had no right to remove them from the premises without first giving notice to the plaintiff to remove the same. Mr. Warren, the defendant’s agent, has as much right to utterly destroy his goods by throwing them into the lake, as he had to put them on board this steamboat to bé transported elsewhere. It came to the plaintiff’s knowledge that the goods were on board the steamboat and the place where the steamboat had landed and stored them, and before the goods had depreciated in value. He declined to accept them, or have anything to do with them, insisting that the defendant’s action was wrongful and amounted to a conversion, at the time the goods were placed on board the steamboat. Such is the law, for if the defendant did any wrong for which an action can be maintained, it amounted to a conversion of the goods, and the plaintiff’s damages were the value of the goods. This precise question was passed upon in Heany v. Heeny, supra.
The other exceptions which were taken upon the trial present no error in the rulings of the court.
The judgment should be affirmed.
Smith, P. J., Haight and Bradley, JJ., concur.