SMITH *v.* BERNDT *et al.*

(*Supreme Court, Special Term, New York County.* May 22, 1888.)

CORPORATIONS — CHARTER AND FRANCHISES — POWER TO LEASE CORPORATE PROPERTY.
    Under Laws N. Y. 1872, c. 361, § 3, providing that the Sea Cliff Grove & Metropolitan Camp-Ground Association may erect and maintain docks along the shore of its lands, and have the exclusive control of them, the association may lease the exclusive control of such docks to another.

At chambers.    On motion to continue an injunction.

Andrew J. Smith, executor, etc., of A. McSmith, deceased, brought this action to enjoin Louis Berndt and Erastus Geer from using or landing with their boats at the Sea Cliff dock, alleging that, as executor, he was the lessee of said dock.

*Edward Kent* and *Butler, Stillman & Hubbard,* for plaintiff and motion. *Frederick W. Diehl,* for defendants.

LAWRENCE, J.   The affidavits show that the dock about which this controversy has arisen, was built by the Sea Cliff Grove & Metropolitan Camp-Ground Association, under the authority conferred by chapter 361 of the Laws of 1872.   Section 3 of that act provides that said corporation is authorized and empowered to erect and maintain suitable docks, piers, wharves, and landing places along the shore of the lands which they have acquired or may acquire in the town of Oyster Bay, in Queens county, and shall have exclusive control thereof, and of the property which they may own, and no railroad shall be opened or laid out over or through said property without the consent of the said corporation.   The lease under which the plaintiff claims, was executed to him by the said Sea Cliff Grove & Metropolitan Camp-Ground Association, and is not merely a lease of the right to take and collect the wharfage which may become due and payable from vessels using said dock, but is a lease of the dock itself for the term of one year from the 1st of January, 1888.   As the Sea Cliff Grove & Metropolitan Camp-Ground Association is, by the act of 1872, not only authorized to erect the dock in question and other docks, but is also given the exclusive control thereof, it would seem that it was within the power of the corporation to lease the exclusive control of the same to other parties.

It is also claimed in this case that the dock in question has become a public dock, either by absolute dedication, or by permission heretofore granted to vessels to use the same upon the payment of wharfage for such use.   So far as the cases which relate to the city of New York are concerned, it seems sufficient to say that they have generally arisen under leases executed by the mayor, aldermen, and commonalty of the city, which leases, upon their face, gave to the lessee only the right to collect wharfage, cranage, etc., and did not vest in the lessee the absolute power and control over the same, such as is given to the Sea Cliff Grove & Metropolitan Camp-Ground Association by the act of 1872.   It has been frequently determined, on the other hand, that a pier which projects into navigable waters is not necessarily public.   See *Wetmore* v. *Gas-Light Co.*, 42 N. Y. 384, where it was held that the public have no right to use the wharves erected by the owners of lands adjacent to the navigable waters of the East river, within the permanent water-line of the city of Brooklyn, although such wharves extend beyond low-water mark, and were erected without the consent of the state.   See, also, *Wetmore* v. *Lead Co.*, 37 Barb. 70, to the same effect.

It is claimed in this case, however, that the dock in question is at the foot of a public highway, and that, therefore, the principle which was laid down in *People* v. *Lambier*, 5 Denio, 9, and in the case of *Harper* v. *Williams*, *ante*, 106, decided by Justice CULLEN, whose opinion has been submitted upon this motion, is applicable to this case.   My strong impression is that this case is distinguishable from those cases, and particularly from that of *Harper* v. *Williams*, in the fact that the dock which was there the subject of consideration appears to have been built for the purpose of commerce, and it does not seem to have been shown that exclusive control of it was vested in the party who built or claimed to own it.   The case of *Harper* v. *Williams* was subsequently tried before Mr. Justice BARTLETT, at the special term, and the complaint of the plaintiff was dismissed, mainly, as would appear from his opinion, upon the ground that the grant in that case, in addition to the

authority given to erect any dock or docks for commercial purposes, expressly confers authority to collect from persons using such dock or docks reasonable and accustomed dockage, to be regulated by the legislature; the learned justice stating that the latter words, when considered with reference to the rest of the language employed in the grant, necessarily imported a public use. There are no such words employed in the statute of 1872, and it seems to me quite plain that the intention of the legislature was to confer upon the corporation therein referred to the right to the exclusive control of the docks which might be erected under the provisions of the statute, and to regulate, and, if it saw fit, to limit, the uses of said docks. I am strengthened in this conviction by the fact that it seems to be apparent that the legislature assumed that the docks to be erected under the power conferred by the act would be used in aid of the religious purposes for which the grounds and buildings owned and erected by the corporation were to be applied. See sections 1, 2, and 4 of the act.

The defendant, however, contends that this dock has been actually dedicated to the public use by the corporation, and that, therefore, it has now no right to grant to its lessee the exclusive use of the same. Various affidavits have been read upon this point, but it is impossible to determine from affidavits alone precisely what the truth is; and as it is always preferable that the court should proceed upon oral testimony rather than upon affidavits, and as justice is much more likely to be promoted when an opportunity is afforded for cross-examining the witnesses, I have come to the conclusion that the plaintiff ought, in this case, to accept the offer which is made by the defendant to refer the same, the reference to proceed upon short notice, and to be continued from day to day until determined; and, as a condition of the continuance of the preliminary injunction, such order will be entered herein.