(70 Misc. Rep. 97.)

SEA CLIFF GROVE & METROPOLITAN CAMP GROUND ASS'N v. OAK-
LAND STEAMBOAT CO. et al.

(Supreme Court, Special Term, Nassau County.  December, 1910.)

1. NAVIGABLE WATERS (§ 43*)—WHARVES—PRIVATE OWNERSHIP—ACCESS TO
ADJACENT HIGHWAY—RIGHTS OF PARTIES.
Where a corporation acting under Laws 1872, c. 361, builds a wharf
from its own land into the harbor and embanks its land against the sea,
bulkheading it by cribwork, a steamboat company having a ferry license
may not build a wharf joining on the cribwork or bulkhead so as to ob-
tain access across it to adjoining land.
[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. § 262;
Dec. Dig. § 43.*]

2. EMINENT DOMAIN (§ 69*)—RIGHTS IN PRIVATE WHARF—COMPENSATION.
Where a private owner builds a wharf near a shore road, his rights
cannot be taken away even for a public use without compensation.
[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 69.*]

Action by the Sea Cliff Grove & Metropolitan Camp Ground Asso-
ciation against the Oakland Steamboat Company and the Phœnix Con-
struction Company.  Injunction granted.

Frank L. Hall (Ernest P. Hoes, of counsel), for plaintiff.
Whitelock & Simons (John J. Graham and Charles T. McCarthy, of
counsel), for defendant steamboat company.

PUTNAM, J.  Plaintiff had built and long owned a wharf project-
ing from Sea Cliff into Hempstead Harbor.  A special statute (Laws
1872, c. 361) empowered the association to erect and maintain "suit-
able docks, piers, wharves and landing places, along the shore of the
lands they have acquired, or may acquire, in the town of Oyster Bay,
in Queens county, and shall have exclusive control thereof."  Plaintiff
thereupon enlarged an old wharf at this place.  The inshore end came
up·on ground naturally sloping, which was raised and bulkheaded on
the front and sides by cribwork.  Starting from the front of this crib,
which was about at low-water mark, the wharf was extended out upon
piling.  The filled land at the shore end of the wharf comes near the
junction of two roads—the Shore road or boulevard, following the
shore from the direction of Glen Cove, which about 50 feet from the
wharf joins Cliff Way, also a public road ascending to the village on
the cliff.  Both roads end near the wharf, although an irregular board
walk six feet wide, resting on piles, extends beyond the wharf to the
south along the base of the cliff.  This cribwork made a shore approach
to plaintiff's wharf so that passengers could descend and vehicles drive
down from the roadway over this solid crib and thence out on the
wharf flooring.
The Oakland Steamboat Company, having been duly granted a ferry
license, proceeded, without plaintiff's consent, to construct a ferry
wharf laid on piles.  The land end of this structure converged at an
angle of about 45 degrees and joined on to the south cribwork or bulk-
head of plaintiff's wharf about two or three feet back from its front,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

upon the side of which it abutted some 27 feet. Defendant's new wharf thence ran out until it came some distance away from plaintiff's wharf, where was a float or landing stage rising and falling with the tide, beyond which were groups of piling set in open formation so as to receive a ferry boat end-on. The outer piling extended into the harbor considerably beyond the end of plaintiff's wharf. The outer extremities of plaintiff's wharf and defendant's float are about 192 feet apart.

Plaintiff claims that the shore end trespasses upon its wharf approach; also, that its outer projection hinders vessels landing at plaintiff's wharf in certain conditions.

The Oakland Steamboat Company asserts its public character as an authorized ferry; also, that this cribwork and the land within it were originally below high-water mark, and that since it was embanked and graded it has been dedicated to, or affected with, a public use, in view of its contiguity to the highway.

Plaintiff's franchise clearly authorized it to inclose and embank the land against the sea, bulkheading it by cribwork, from which "to wharf out" upon piling. Such an artificially raised walled approach was part of the wharf or dock (Fitchburg R. Co. v. Boston & Maine R. Co., 3 Cush. [Mass.] 58, 87), and was literally the "landing place" as described in the franchise. Having been built by plaintiff, on its land, under its exclusive franchise, it is presumed to continue to be plaintiff's private property. While the public may have access from the highway to the water, that right ceases at the point where a private wharf is constructed. In Lyons v. Fishmongers Co., 1 App. Cas. 662, Lord Cairns said (page 676):

"Independently of the authorities, it appears to me quite clear that the right of a man to step over his own land onto a highway is something quite different from the public right of using the highway. The public have no right to step onto the land of a private proprietor adjoining the road."

The fact that a wharf is by a shore road was not considered as depriving it of a private character in Burrows v. Gallup, 32 Conn. 493, 87 Am. Dec. 186. Also, in Weems Steamboat Co. v. People's Steamboat Co., 214 U. S. 345, 29 Sup. Ct. 661, 53 L. Ed. 1024, several of the river wharves in question were at points where the highway came down to the water, but were nevertheless held to be private.

If the filled-in approach to the wooden dock is below the line of high-water mark, this was a right conferred from the state. The force of the statute authorizing such a dock gave plaintiff title to the lands under water so covered. Wetmore v. Brooklyn Gaslight Co., 42 N. Y. 384. Even if this were otherwise, only the state could object. Defendant has no standing to enter upon such lands for any purpose.

The proofs show that the highways ended some distance from plaintiff's wharf, and that the portion of the approach to which defendant connected its structure had not been dedicated to the public, but was an integral part of plaintiff's private wharf, within plaintiff's franchise and under its exclusive control. In addition to this wharf, plaintiff still owns a small triangular lot adjacent to the south wall of this approach running diagonally alongshore for about 29 feet, with other separate frontage farther south. Whatever may be the present use of

these strips of shore, such ownership constitutes a protection against the encroachments of any structure shutting off convenient access to this bay frontage.

While defendant's ferry may be a public convenience and entitled to greater consideration than any private enterprise, still for that reason defendant cannot take any part of plaintiff's wharf, save upon making compensation therefor. The location of the intersection of Cliff Way and the Shore road may be the one natural ferry site for this region, but private rights must be respected. As Lord Hale said:

"And many times it falls out that such a place within a port may be of great conveniency to make a common key or wharf where the propriety of the soil may belong to a subject, whereby either his interest must be bought in by the lord of the port, or he must have these benefits that may arise by the taking or landing of merchandise." De Portibus Maris, Hargrave's Law Tracts, p. 76.

Although the encroachment on plaintiff's wharf was doubtless under misapprehension of the relative rights, it is not the less an interference, and to be enjoined. Haskell v. New Bedford, 108 Mass. 208; Morris Canal Co. v. Jersey City, 26 N. J. Eq. 294.

Without deciding as to defendant's rights relative to the floating stage and ferry piling at the outer portion of its structure, it is clear that defendant has no legal right to lap onto plaintiff's wharf with its present shore connections. Plaintiff is therefore entitled to an injunction restraining such interference.

The extent and scope of this order, and how far out the structure should be enjoined, are to be determined upon settlement of the findings and decision hereon.

Ordered accordingly.