## JOSHUA PEABODY & *als. versus* JOSEPH HEWETT.

If, within twenty years after one is disseized of his land, the heirs of the disseizee, or their agent thereunto duly authorized, *legally enter* upon the premises, it will put an end to the ouster and vest the actual seizin in those who have the right.

The mere going upon the land will not always constitute a *legal* entry.

If the disseizee, or his duly authorized agent, go upon the *locus in quo*, with the intent of making an entry, and, then and there, declare to the disseizor such purpose, it will be a legal entry.

If such entry be made by one of the heirs of the disseizee, or by more than one but less than all; or by the authorized agent of one or more but less than all, it will be presumed, in absence of all proof to the contrary, to be in maintenance of the right of all.

The "*actual possession*" in § 1, c. 34, of the Public Laws of 1853, does not differ from that mentioned in § 23, c. 145, of R. S. of 1841, excepting as to the time of its continuance.

The declarations of a former tenant in possession, limiting or qualifying his right arising from possession, are admissible, when he, with the knowledge of the disseizor, acts as agent of the disseizee, notwithstanding he may have executed a contract for the conveyance of the premises to a subsequent tenant under whom the defendant in the present action claims to hold.

And such declarations cannot be considered contradictory to the contract itself.

The party holding such a contract as valid, possesses the premises described therein in subjection to the one having the title.

When the land disseized contained a quarry of granite undisclosed until the operations of the tenant, the tenant has no legal right to require the presiding Judge to instruct the jury, that, in estimating what would have been the value of the premises if no buildings had been erected, or improvements made, or waste committed, they should find what the value would have been without that knowledge of the quality and value of the granite which the tenant's improvements alone have disclosed, by opening the quarries and working the granite; for the intrinsic value of the premises might have been as fully manifested otherwise.

A verdict will not be set aside because it differs from the opinion of the witnesses as to the value of the land in question, when no improper influences appear to have biased the jury.

When one, jointly with others, signs, seals, and delivers an instrument supposed to be a perfect deed, but *his* name appears in no other part thereof, his interest in the premises described in such instrument is not thereby conveyed.

When such defect in a deed is not discovered at the trial, and the jury, in consequence thereof, find for the demandants for the *entire* premises described in the writ, when, in fact, they owned only an aliquot part, this Court will cause the verdict to be amended when it furnishes all the necessary facts.

, ON EXCEPTIONS and REPORT from *Nisi Prius*, TENNEY, C. J., presiding.

WRIT OF ENTRY.

The plaintiffs claim as the heirs of Solomon Peabody. The defendant claims under one Israel Gregory.

Stephen Peabody, called by the plaintiffs, testified:— " Solomon Peabody was my father. He died twenty-three years ago. Twenty years ago, mother and I went upon Peabody's island to get Gregory off from what we thought was our own island. I saw Gregory; mother and I went to his house on the island. Mother told him father was dead. She presumed the island was in her custody. She presumed she was empowered to look it up for her and her children. She asked Gregory how he came by the possession of the island. He said he had his title by Mr. Ulmer. Gregory told mother he had built a house on the island. She asked him by what authority. Gregory proposed to buy it of mother if she would sell. She refused; said she was old and did not want it for herself, but for the benefit of her children.

" I had brothers and sisters at Jonesport, and knew that they authorized mother verbally to come and look it up. I knew that minister Boynton was sent by the heirs for the same purpose fifteen years ago. I helped pay him."

*Rice Rowell*, called by the plaintiffs, testified:—" I have known Israel Gregory forty years. Gregory once showed me the Ulmer agreement. I think the one produced is the one; bond for a deed of the island. Gregory told me he was acting for Peabody. Have heard him speak of the Peabody's owning it a great many times. He never, in these conversations, claimed title. He asked me if I thought that bond was sufficient for him.

Peabody *v.* Hewett.

" I remember a minister came to my house about fourteen or fifteen years ago, with a paper. I met Gregory and asked him if he had seen the minister; he said he had gone away. It was the same day that he asked me if I was going to buy the island. I told him I did not know but I should. He said if he knew who the right owner was he would buy it."

*Alden Ulmer*, called by the plantiffs, testified:—"I am the son of Philip Ulmer. Am fifty-two years old. Remember when father cut hay on Peabody's Island, I was then eighteen or nineteen years old. Think father had care of the island two or three years. [Heard father say he never had the island in charge for himself. This he said while in possession. The conversation was, that Peabody owed him a small sum, and that he had the island in charge to make his pay out of, and whatever he made over that, he was to turn to Peabody."] The testimony included within brackets was objected to by the tenant's counsel, but admitted.

The tenant's counsel requested the Court to give the following instructions, among others, to the jury:—

2. That the facts as testified by Stephen Peabody respecting his going with his mother to the island and having there a conversation with Gregory, and all that was said or transpired at the time, cannot by law have the effect to interrupt the actual and exclusive possession of the tenant, so as to prevent him from having title after the period of twenty years' possession commencing before that time.

3. That the facts mentioned in the last request cannot by law operate to deprive the tenant of the benefit of the provisions of the 34th chap. of the statutes of 1853, relating to betterments, to wit, "An Act additional to c. 145 of the R. S.

4. That if the tenant or Gregory, under whom he claims, had open, actual, adverse and exclusive possession of the premises, using them as his own, the going on to the island by Stephen Peabody and his mother, and all that was then

and there said and done, as testified by said Peabody, or the declarations of Gregory respecting the ownership of the island, as testified by Rowell, would not in law have the effect to interrupt the continuity of such possession, so as to deprive the tenant of the benefit of such possession, if continued to twenty years and over.

5. If the Judge declines to give the last requested instruction, in such case, he is requested to instruct the jury that such a possession would not be interrupted by the facts therein referred to, so far as to deprive the tenant of the benefit of the Act of 1853, c. 34, above mentioned.

The pleadings, facts in relation to the title, the other material requested instructions, and the actual instructions given to the jury, all sufficiently appear in the opinion of the Court.

The jury returned a verdict for the demandants; that the tenant holds the premises by virtue of a possession and improvements, and has had the same in actual possession for six years or more, before commencement of this action; and that the increased value of the demanded premises by reason of the buildings and improvements made by the tenant and those under whom he claims, to be the sum of $8,137. They also found that the value of said premises, had no buildings been erected, or improvements made, or waste committed by the tenant or those under whom he claims, would be the sum of $3,336.

The jury returned no other special findings, and were not directed so to do ; but, upon inquiry by the Court, the foreman stated that they also found that the tenant, and those under whom he claims, had not had the actual possession of the demanded premises more than twenty years prior to the commencement of this suit.

To the refusals to instruct the jury as requested, and to the instructions, the tenant excepted ; and filed a motion to set aside the verdict as against law, against evidence, and the weight of evidence.

*Peter Thacher & Brother,* for the tenant, submitted an elaborate argument upon all the points raised, the material points of which are as follows : —

I. The declarations of Philip Ulmer, as testified to by Alden Ulmer, were inadmissible.

1. Because they were contradictory to the written agreement of said Philip with Gregory, introduced by demandants.

2. Because the demandants having, by said agreement, shown said Philip in possession, at its date, — Jan. 10, 1829, — claiming it and using it as his own, was estopped from putting in Philip's declarations, that he had, in fact, no claim, and made none in his behalf.

3. Because his declarations were in themselves inadmissible, the tenant not claiming under, or setting up any title under him.

II. The 2d and 4th requested instructions ought to have been given. The instructions given relative to the points therein named and touching a legal entry and the effect thereof, were erroneous.

III. The 3d and 5th requested instructions concerning the true intent of the Act of 1853, c. 34, were erroneous. The "*actual possession*" in that Act is not a possession, which, if continued twenty years, gives title. It means actual *occupation*. If the tenant has had exclusive, uninterrupted, adverse possession twenty years, he becomes the legal owner. By Act of 1853, it is intended, that, if he has had "actual possession" twenty years, his possession not being such as to give him title, rights shall belong to him additional to those he enjoyed or would have enjoyed under former statutes, and the owner shall not disturb him but upon terms more favorable to the tenant and less so to the demandant.

The "possession" under Act of 1853 is not the same as that under § 23, c. 145, R. S., from the fact that twenty years' adverse, uninterrupted possession gives title to such possessor, and, therefore, there would be no occasion to

provide a more favorable rule, or any rule, for giving him *betterments*. It is absurd to give one *betterments* in his *own land*, or to compel the demandant to pay betterments and take the land when he makes out no title.

There is no provision for the tenant's abandoning land to demandant, when he proves title in himself, nor are terms or conditions named on which it can be done.' But it is expressly provided that the demandant may abandon to the tenant, showing clearly, that, though the tenant has proved that "he and those under whom he claims have had the actual possession for more than twenty years * * and the jury have found in conformity thereto," the tenant has failed to establish his title, and the demandant prevails, *because* the tenant's possession was not of a character, however long continued, to give title.

IV. The verdict is against the evidence, because the jury have returned a verdict for the *whole* of the demanded premises, while demandants have proved title to but an aliquot part. William Peabody, one of the heirs, is not joined as a party, and has never conveyed his interest to the demandants. R. S., 1840, c. 145, § 13.

William Peabody's name nowhere appears in the deed except as a signer. His interest is not thereby conveyed. *Catlin* v. *Ware,* 9 Mass., 218 ; *Ag. Bank of Miss.* v. *Rice & al.* 4 Howard's (U. S.,) 241, and cases there cited.

Verdict cannot be amended in this particular.

Verdict is against evidence as to title and as to the question of *value.*

The jury found the value of improvements far below any witness, and the value of the premises without improvements far above any witness.

*A. P. Gould and J. O. Robinson,* for demandants, submitted an extended and learned argument, on the following propositions : —

I. Gregory, under whom tenant claims, went into possession as tenant of Solomon Peabody. He then held under

agreement with Ulmer, Peabody's agent, for a conveyance of the premises, upon certain named conditions.

Gregory, having thus entered by consent of owner, a *clear, positive,* and *continued* disclaimer and disavowal of the title, and an assertion of an adverse right brought home to the owner, are indispensable before any foundation can be laid for the operation of the statute of limitations. *Zellirs' Lessee* v. *Eckert & als.*, 4 Howard's S. C., 289; *Ripley* v. *Yale*, 18 Vt., 220; *Jackson* v. *Bard*, 4 Johns., 230; *Berkans* v. *Vanzandt*, 7 Barb. S. C., 92; 2 Smith's Leading Cases, 496.

II. The disseizin by Gregory had become *purged.* *Means & al.* v. *Wells & al.*, 12 Met., 356; *Vaughan* v. *Bacon*, 15 Maine, 455; *Shumway* v. *Holbrook*, 1 Pick., 114; *Barnard* v. *Pope*, 14 Mass., 438; *Marcy* v. *Marcy*, 6 Met., 371; Stearns on Real Actions, 4; Co. Litt., 238; *Robinson* v. *Swett*, 3 Maine, 316; Skinner's Rep., 412; *Jackson* v. *Haveland*, 13 Johns., 229.

III. The declarations of Philip Ulmer were made while in possession as the agent of Peabody, and *known* to be thus by Gregory. *Uncle* v. *Watson*, 4 Taunt., 16; *Little* v. *Libby*, 2 Maine, 242; *Ken. Purchase* v. *Laboree*, 2 Maine, 275; *Bartlett* v. *Belfast*, 4 Mass., 707; *Holt* v. *Walker*, 26 Maine, 107; *School Dis. in Winthrop* v. *Benson*, 31 Maine, 384; 2 Term Rep., 53; 1 Esp. Ca., 458.

IV. "Actual possession," in Act of 1853, must be adverse. Language is identical with that of c. 145, R. S., § 23, which has received judicial construction. *Treat* v. *Strickland*, 23 Maine, 237; *Knox* v. *Hook & al.*, 12 Mass., 329; *Propr's Ken. Pur.* v. *Kavanagh*, 1 Maine, 348; *Butler* v. *Arnold*, 31 Maine, 583; *Mason* v. *Richards*, 1 Pick., 142.

V. Verdict should not be set aside because of the omission of William Peabody's name in the body of the deed, because,

1. Objection should have been taken at the trial.

2. If William Peabody is still owner, there is no contro-

versy between *these parties* about his interest, and it does not concern the tenant, he not claiming under him.

3. It does not appear that William Peabody is still living.

4. William signed, sealed and delivered the deed as a tenant in common with others. *Bird* v. *Bird*, 40 Maine, 398 ; *Elliott* v. *Sleeper*, 2 N. H., 525 ; *Carr* v. *Williams*, 10 Ohio, 305 ; *Mead* v. *Billings*, 10 Johns., 99.

If no person's name had been mentioned in the body of the deed, it would have been the conveyance of all the persons signing, as a deed poll.

Verdict may be diminished and thus save a new trial, when, as in this case, the Court have the means of determining the excess. *Plummer* v. *Walker*, 24 Maine, 14 ; *Lambert* v. *Craig*, 12 Pick., 199 ; *Hobart* v. *Hagget*, 12 Maine, 67 ; *Porter* v. *Rumney*, 10 Mass., 64 ; *Clark* v. *Lamb*, 8 Pick., 415, and authorities there cited.

The opinion of the Court was drawn by

TENNEY, C. J. — The demandants in this action seek to recover a judgment for possession of a tract of land in Muscle Ridge plantation, in the county of Knox, formerly known as Peabody's island, and more recently as Hewett's island.

The tenant pleads the general issue, which is joined. He also files a brief statement, claiming what are usually denominated betterments, on two grounds. 1. That, the premises having been in the actual possession of the tenant, and those under whom he claims, for more than six successive years before the commencement of this action, he claims compensation for the buildings and improvements on the premises, made by him and those under whom he claims ; and he requests that an estimation be made by the jury of the increased value of the premises, by reason thereof. 2. That he alleges and offers to prove that he, and those under whom he claims, have had the premises in actual possession for more than twenty years prior to the commencement of this action, and he requests that the jury shall find

the value of the premises, at the time the tenant and those under whom he claims first entered thereon, and that, in estimating the increased value of the premises by reason of the buildings and improvements, they shall find the value of the premises at the time of the trial, over and above the value thereof at the time the tenant and those under whom they claim first entered thereon.

The demandants, in proper written form, request that the jury estimate what would have been the value of the premises at the time of the trial, provided no buildings had been erected, or improvements made, or waste committed by the tenant or those under whom he claims, if they shall find the tenant is entitled to betterments, and shall estimate the value of the buildings and improvements, or the increased value of the premises, by reason thereof, as requested by the tenant.

Stephen Peabody conveyed to Solomon Peabody, the father of the demandants, by warranty deed dated Nov. 9, 1803, duly acknowledged and recorded, the island in question. Stephen Peabody received conveyance by a like deed from George Ulmer, dated July 27, 1803, of the premises.

Solomon Peabody was in possession, under the deed to him, from its date till about the year 1827, of the same, when he moved away and was soon after succeeded in occupation of the island by Israel Gregory, who continued to occupy the same till July 24, 1843, when he conveyed the same by a warranty deed, to the tenant, duly acknowledged and recorded.

Under the general issue, the tenant claims to hold a title in fee by a disseizin made by Gregory, his grantor, continued without interruption for more than twenty years by his grantor and himself.

That more than twenty years have elapsed since the tenant's grantor commenced the occupation of the premises, before the date of the writ, is not denied, but it is insisted for the demandants, that during the most of the time between the commencement of the occupation of Gregory and

the institution of this suit, this occupation has been in submission to the title of Solomon Peabody, during his life, and of his heirs or their grantees, since his death; and if any disseizin has been made by the tenant or those under whom he claims, it has been purged.

The demandant introduced in evidence a writing, coming from Gregory's possession, in the following words and figures:—"Thomaston, Jan. 10, 1829. This is to certify, that I, Philip Ulmer, of Thomaston, do agree to convey a certain island, known by the name of Peabody's island, and one by the name of Crow island, and another by the name of Two Bush, for the consideration of three hundred and fifty dollars, to be paid in two years, in annual payments, which Israel Gregory has given his notes for this day, and if said Gregory pays said notes, then the said Ulmer is to give the said Gregory a deed of the above mentioned islands, and if said Gregory fails of paying said notes, then the above obligation is to be void, otherwise it shall remain in full force and virtue.                          "Philip Ulmer.

"Attest, Harriet Ulmer.    Alden Ulmer."

Alden Ulmer, called as a witness for the demandants, testified that he was the administrator of his father, Philip Ulmer's estate, that he was fifty-two years old; remembered when his father cut the hay on Peabody's island, was eighteen or·nineteen years old at the time his father cut the hay, and that his father had the care of the island, some two or three years before Gregory went on; did not recollect the time of going on, or the fact. The witness further testified that he "heard his father say he never had the island in charge for himself; this was while he was in possession. The conversation was, that Peabody owed him a small sum, and that he had the island in charge to make that out of, and whatever he made over, that he was to return to Peabody."

The testimony contained in the preceding paragraph was objected. to by the tenant. The witness further stated, that he never set up any claim to the island, and his father never claimed title thereto to his knowledge.

The demandants introduced in evidence the two notes dated January 10, 1829, signed by Gregory, payable to Philip Ulmer, in one and two years respectively, with interest, and described in the contract of the same date; also a receipt dated May 28, 1828, Philip Ulmer to Israel Gregory, for rent of the island.

The case discloses much evidence, introduced by the demandants, tending to show that Gregory well understood that Peabody was the owner of the island, and that Philip Ulmer had the charge thereof as the agent of Peabody; and that, in addition to the contract given by the said Ulmer, and the notes of Gregory, he repeatedly recognized the right of Peabody as the owner of the island, and, as late as the year 1840, drove to Thomaston a yoke of oxen for the purpose of delivering the same to Ulmer, as part payment of the notes given as the consideration of the contract. Evidence was also introduced by the tenant, for the purpose of showing that Gregory repudiated the right of Peabody and of Ulmer to the island, and in explanation of the evidence adduced by the demandants.

Evidence was also introduced by the demandants to show that, at several times, some of the heirs of Solomon Peabody, and his widow, and the agent of the widow and the heirs, made entries upon the premises, by the authority of the heirs, with the intention of vesting the seizin in the heirs.

The tenant's counsel requested certain instructions to the jury, which were given; other requests for instructions were not given, or were qualified, which his counsel do not rely upon in argument. These it is unnecessary now to consider.

The second and fourth requests, as they were presented, were, that the testimony of certain witnesses for the demandants, on which reliance was placed to show entries to interrupt the disseizin of the heirs of Solomon Peabody, after his decease, could not have such effect in law, so as to prevent the tenant from obtaining a title in fee to the pre-

mises, by the continued adverse possession of twenty years before the institution of this suit.

The Court did not undertake to give a construction to the language of the witnesses, as upon a written contract, and to determine the legal effect thereof, but instructed the jury that, if the heirs of Solomon Peabody, or by their authorized agent, lawfully entered upon the premises within twenty years after the disseizin of Peabody by Gregory, the seizin was thereby vested in the heirs, and the effect of such entry was to put an end to the ouster; and if Gregory, as a wrongdoer, still retained the possession after the entry, it was a new disseizin of the heirs. That, if the entry was made by one of the heirs, or by more than one less than all, or by the agent of one or more less than all, it is presumed to be in maintenance of the rights of all, in absence of all proof to the contrary. That, to constitute a legal entry, the party must go upon the premises with that intent. The mere going upon the land will not always constitute a legal entry sufficient to vest the actual seizin in those who have the right. If, within twenty years after Gregory first disseized Solomon Peabody, the heirs of the latter, or their agent, duly authorized, went upon the premises with the intent of making the entry, and they then and there disclosed to Gregory that they came for such purpose, it would be a legal entry, and, if a legal entry was made within twenty years before the commencement of the present action, the defence under the general issue was not maintained.

The third request was, that the same facts mentioned in the second request, cannot by law operate to deprive the tenant of the benefit of the provisions of the 34th chapter of the statutes of 1853, relating to betterments, to wit, an Act additional to c. 145 of the R. S. And the fifth instruction requested was, if the Court declined to give the last requested instruction, in such case, he is requested to instruct the jury that such a possession would not be interrupted by the facts therein referred to, so far as to deprive the tenant of the benefit of the Act of 1853.

Under the third and fifth requests, the Judge remarked, that the actual possession mentioned in the statutes of 1853, c. 34, § 1, was a possession, which was open, notorious and adverse in its character, did not differ from that mentioned in the R. S. of 1840, c. 45, § 23, excepting as to the time of its continuance.

The sixth instruction requested was, that in estimating what would have been the value of the premises if no buildings had been erected, or improvements made, or waste committed, the jury should find what the value would have been, without that knowledge of the quality and value of the granite which the tenant's improvements alone had disclosed, by opening the quarries and working the granite. The instruction requested was not given, but the jury were instructed that "they would estimate what would have been the value of the premises at the time of the trial, provided no buildings had been erected, or improvements made, or waste committed," from all the evidence in the case, and they were instructed, that the foregoing was the rule of law which they would be governed by, and what effect they would give to the evidence was submitted to them to determine as matter of fact.

In addition to the foregoing instructions under the requests, the Court instructed the jury that, if the writing of January 10, 1829, was executed by Philip Ulmer and delivered by him to Gregory, as the agent of Solomon Peabody, and Gregory knew at the time that therein Ulmer was acting as the agent of said Peabody, it is evidence that Gregory was holding in submission to said Peabody.

There is evidence from deeds introduced that Solomon Peabody had title to the premises. There is none that Philip Ulmer had acquired any title. His contract to convey to Peabody is not evidence of a title in him. He was in possession of the premises, and, like the declaration of any other tenant in possession, his statements, going to limit or qualify his right arising from possession, was admissible to show the character of the possession. In connection

with other evidence that Ulmer acted as an agent of Peabody, and that Gregory knew it, made the part objected to admissible with the other portion of the testimony upon that point. If the jury believed the evidence, Gregory held the relation to Peabody of having taken a contract to convey land to him on the fulfilment of the condition. And so long as such a relation continues, the authorities cited for the demandants, well establish the principle that the party holding such contract as valid, possesses the premises described therein, in submission to the one having the title. The evidence cannot be regarded as contradictory to the contract itself.

Much evidence was in the case, according to the report on the subject, whether an entry had been made on the part of the heirs of Solomon Peabody. The Court gave instructions touching the facts necessary to be proved to constitute an entry sufficient to vest the seizin. In *Robinson* v. *Swett & al.*, 3 Greenl., 316, it is said by WESTON, J., in delivering the opinion of the Court, "an entry into land to purge a disseizin should be made with that intention; and such intention should be sufficiently indicated, either by the act itself or by words accompanying the act." "The intent may sometimes appear from the act; at other times from the declarations of the party, but when both are taken together, it will be still more manifest." Stearns on Real Actions, 43. "And when the entry is to be made upon land, the person who makes the entry may go upon any part of the land, declaring the purpose for which he enters." Ibid, 43.

"In several cases the entry for one person may enure to the use of another. The case of joint tenants and tenants in common have been alluded to." Stearns on Real Actions, 42; *Means* v. *Wells*, 12 Met., 356. These authorities sustain the instructions on this point.

The instruction giving the meaning of the statute of 1853, c. 34, § 1, cannot be held erroneous. This chapter is entitled "An Act additional to chapter 145 of the Revised

Peabody *v.* Hewett.

Statutes." "When the demanded premises have been in the actual possession of the tenant or those under whom he claims for six successive years or more, before commencement of the action, he shall be allowed a compensation for the value of any improvements," &c. R. S., 1840, c. 145, § 23.

By the statute of 1853, c. 34, § 1, it is provided, "and if the tenant claiming compensation for buildings and improvements, and making a request for an estimation by the jury of the increased value of the premises by reason thereof, shall also allege and prove that he and those under whom he claims have had the premises in actual possession for more than twenty years prior to the commencement of the action, the jury may find that fact, and, in estimating the value of the premises, provided no buildings or improvements have been made thereon, by the tenant or those under whom he claims, shall find and in their verdict state what was the value of the premises at the time when the tenant or those under whom he claims, first entered thereon. And the sum, so found and stated, shall, for the purposes of the aforesaid chapter, be deemed and taken for the estimated value of the premises. And, in estimating the increased value of the premises by reason of the buildings and improvements, the jury shall find and in their verdict state the value of the premises, at the time of the trial, over and above the value thereof at the time when the tenant or those under whom he claims, first entered thereon. And the sum, so found and stated, shall, for the purposes of said chapter, be deemed and taken to be assessed for the buildings and improvements."

A construction has long since been put upon the Act, which was substantially the same as that of R. S. of 1840, c. 145, § 23. And the "actual possession" as used therein was that which was adverse to the legal title. *Knox* v. *Hook*, 12 Mass., 329 ; *Treat* v. *Strickland*, 23 Maine, 237. And in the revisions of the statutes, when the same lan-

guage had been substantially retained, the construction is to be treated as adopted by the Legislature.

It is contended that, in the additional statute to that which has long been so familiar to the profession, the words "actual possession" does not mean a possession which is adverse, but one which has all along been the possession under a party having a title in fee. It is not easy to adopt a construction which may operate to produce the most flagrant injustice, and which shows such a poverty of language, that the Legislature could not find terms to make known their intention, without giving to words in the same chapter, which are identical, a meaning wholly inconsistent with each other, and producing a result in one part diametrically opposite to that in another.

If a party owning lands has been disseized thereof, and that disseizin has continued for twenty years, compensation to the disseizee for his buildings and improvements is a simple absurdity. He obtains a title in fee. But there may be cases when a party has been in the adverse possession of real estate for a term much longer than twenty years, and he is still liable to be dispossessed, but not by the one whom he or those under whom he claims has disseized. When a person has title to an estate in lands for life, remainder to another, the former may have been disseized for more than twenty years; his right of entry is forever barred; but during his life the remainderman can have no right of action or right of entry. These rights do not commence till the determination of the particular estate. When that is determined, the remainderman is by law admitted to his right of action, which cannot be resisted, unless it be upon other ground. For such and similar cases, it is apprehended, the statute of 1853, c. 34, was enacted. Whether it can be effectual or not in a case to which it may be applicable we give no opinion.

The sixth requested instruction, if given, would have restricted the value of the premises to the condition in which they were, when the "actual possession" as used in R. S. of

1840, c. 145, § 23, of the tenant commenced. If it had not been for such "actual possession" of the tenant, the intrinsic value of the island might have been as fully manifested as by the operations of the tenant. The whole matter was properly submitted to the jury under all the evidence in the case.

The motion that the verdict be set aside and a new trial granted, because the verdict is against law, against evidence and the weight of evidence, we will briefly consider.

On the questions touching the value of the buildings and improvements, and of the value of the premises, if no buildings or improvements had been made, or waste committed thereon, the finding of the jury differs from the opinions of most of the witnesses introduced. But the facts on which these opinions were based were disclosed by witnesses, who had good opportunity of knowing such facts, and may be considered as an important element for the consideration of the jury in finding the value which they were to pronounce in their verdict; and we are not satisfied that the jury were under such influences as to make it the duty of the Court to disturb the verdict on this account.

It appears, from the evidence, that there are nine children of Solomon Peabody, who are the only heirs; that the demandants have the title of eight of them without dispute. It was supposed by both parties, at the time of the trial, that the interests of all the heirs were united in the demandants, and the verdict was rendered accordingly. Among the heirs was the son of the ancestor, William Peabody, who appears to have signed and sealed an instrument, supposed to be a perfect deed, to Sarah N. Patten, one of the demandants, dated Sept. 10, 1844, but his name appears in no other part thereof, and it is denied that any portion of the premises passed by it.

No evidence was introduced to show the death of William Peabody, and he must be treated as living.

According to 2 Black. Com., 297, the matter of a deed must be legally and orderly set forth; that is, there must

Peabody *v.* Hewett.

be words sufficient to specify the agreement and bind the parties. It is not absolutely necessary, in law, to have all the formal parts that are usually drawn out in the deeds, so as there be sufficient words to declare clearly and legally the party's meaning. In *Catlin* v. *Ware,* 9 Mass., 218, it is said by the Court, "a deed cannot bind a party making it, unless it contain words expressive of an intention to be bound." We think the instrument is not operative as a deed to convey the interest of William Peabody.

Can the verdict be amended so that judgment may be rendered for that undivided portion of the premises which is the property of the demandants? This defect was unknown to the parties and their counsel at the time of the trial, as we understand from the arguments. It was supposed by both that if the demandants should prevail, it would be for the premises described in the writ, entire. But they must recover upon the strength of their own title. If the fact now disclosed was made known at the trial, they could have recovered a verdict for that undivided portion of the estate to which they had proved a title, under R. S. of 1840, c. 145, § 13.

The verdict furnishes all the facts which are necessary to make the correction in every respect. According to the authorities cited for the demandant, the verdict may be amended in conformity to the truth of the case as disclosed by the deed in which the defect appears. *Clark* v. *Lamb,* 8 Pick., 415. On the amendment being made, the exceptions and motion should be overruled.

APPLÈTON, GOODENOW, KENT and DICKERSON, JJ., concurred.