LUCY A. BATCHELDER *vs.* CHESTER W. ROBBINS, and others.

Penobscot.    Opinion February 6, 1900.

*Adverse Possession.    Interruption.    Notice.*

Where the plaintiff in a writ of entry claims title by adverse possession, and the acts of occupation alleged by the defendant to work an interruption of such possession emanate from the record owner in assertion of his title, and are of such a character as to afford reasonable notice of such claims of ownership, it is not essential that the plaintiff should have actual knowledge at the time that the acts of occupation were authorized by the record owner. It is sufficient if in such a case it appears that by the exercise of reasonable diligence such actual knowledge might have been obtained.

*Held;* that an explicit statement, in a charge to the jury, that the plaintiff must be shown to have had such knowledge, imposed upon the defendant too heavy a burden of proof, and must be deemed error.

ON MOTION AND EXCEPTIONS BY DEFENDANTS.

This was a real action, brought to establish the title to a certain tract of land in the city of Old Town. The defendants pleaded the general issue. Plaintiff claimed title by adverse possession, under color of title, by virtue of quitclaim deeds to Samuel Pratt, under whom the plaintiff claimed as heir. The defendants also claimed title by adverse possession, under color of title, by virtue of warranty deed or deeds from one Jeremiah Swan. The only question submitted to the jury was whether either the plaintiff or defendants had acquired title to the land in question by adverse possession. The defendants claimed that the acts of possession testified to by the plaintiff were not sufficient in kind and character to give title by adverse possession, and that even those acts

were not continued uninterruptedly by the plaintiffs, and those under whom she claimed, for any period of twenty consecutive years. The jury returned a verdict for the plaintiff.

The case appears in the opinion.

*P. H. Gillin, E. C. Ryder, and Clarence Scott,* for plaintiff.

*J. F. Gould ; F. J. Martin and H. M. Cook,* for defendants.

SITTING: EMERY, HASKELL, WHITEHOUSE, WISWELL, SAVAGE, JJ.

WHITEHOUSE, J. This was a writ of entry brought by the plaintiff to establish her title to a certain tract of land on "Treat & Webster Island" in Old Town, designated on a plan made by A. S. Howard in 1835, as "lots 43, 44, 45, 46, 47, 48, 49, 50 and 51." The plaintiff sought in the first place to derive title under a deed from Treat and Webster of July 30, 1823, through various mesne conveyances to her father, Samuel Pratt, and under a quit-claim deed from Newell Blake to Samuel Pratt, dated April 14, 1860, founded on a tax title.

The defendants claimed title by virtue of a deed from Jeremiah A. Swan, dated October 4, 1894.

But the plaintiff furthermore claimed that, immediately upon the delivery of the deed from Newell Blake, in 1860, Samuel Pratt, the grantee therein named, entered into actual occupation of the land described in the writ, under color of right and claiming title thereto; that such occupancy was continued to the time of his death in 1863, and subsequently by his heirs, the plaintiff and her sister, until 1867; that the plaintiff then acquired by purchase the interests of her sister and mother in the property and thereafter continued in the uninterrupted occupation of the premises until 1894. It was accordingly contended that prior to the date of the defendants' deed in 1894, the plaintiff had acquired a perfect title to the premises by adverse possession.

The plaintiff's claim of adverse possession was contested by the defendants upon two grounds: first, that the plaintiff's occupancy and acts of ownership were not of such kind and character as

would ripen into a title by adverse possession; and secondly, that her possession had not been continuous and uninterrupted for a period of twenty years.    There was evidence tending to show that during the period of the plaintiff's occupancy, several other parties cultivated and occupied some parts of the demanded premises, and the defendants relied especially upon the occupancy of John B. Beaulieu, who was alleged to have been a lessee of Jeremiah A. Swan from whom they derived their title in 1894.

The only question submitted to the jury was whether the plaintiff had acquired a title to the land by adverse possession.    The jury returned a general verdict for the plaintiff and found specially that the plaintiff, and her predecessors under color of title, had been in the possession and occupation of the premises for twenty consecutive years; and also that the plaintiff herself had "been in open, notorious, adverse, exclusive and uninterrupted possession and occupancy of the lots 43 to 51 both inclusive claiming title thereto, for a period of twenty consecutive years."

The case now comes to this court on exceptions to the rulings and instructions of the presiding justice and also upon a motion to set aside the verdict as against the evidence.

The exceptions:    With respect to the continuity of the plaintiff's possession, and the character of the occupancy on the part of the defendants' grantor, or those claiming under him, which would amount to an interruption of the plaintiff's possession, the presiding judge instructed the jury, inter alia, as follows:

"And it must be uninterrupted by the owner for this period of twenty years.    An interruption which would prevent the running of the limitation and the acquiring of title by possession might be by suit of the owner, and it might be by some decided, visible open acts of the owner, inconsistent with the claim of the party setting up adverse possession within twenty years, and brought home to the knowledge of the party asserting it either by words or by acts in the open, so that the party would know that the owner was asserting his right; it would not be an interruption of adverse possession, occurring within twenty years, for the true owner to go upon the lot in the night time and do something there which was

not apparent, or, if it was a wood lot, to go in and cut a tree or some trees of which the party, seeking to gain title by adverse possession had no knowledge. It would need to be something which was brought home in some way to the senses, the eyes or ears of the party who was in possession, claiming adversely, which would indicate to him that the owner was intending to assert his rights as against him. . . . .

"An interruption to interfere with and make a break in the twenty years of the party acquiring title by adverse possession, must be by the owner or by his authority. It is not a legal interruption for a trespasser to go onto the land, for a man to go upon there without any authority or consent of anybody and build a house and squat there; he is a mere trespasser. It must be an interference by the owner himself or by somebody having authority to act for him or occupy under him; and in such a case as that, if the true owner went and built a house upon it or let it to somebody to build a house, and that house was occupied by the true owner or his tenant, that would be an interruption to possession being acquired adversely by the other party. But these acts by a man not acting by the authority of the owner, a mere trespasser, squatters, would have no such effect as to interrupt the acquiring of title by adverse possession. . . . .

"It is said that some men went on there and planted little gardens, and that they went there, in one case I think and perhaps more, but I remember one where the party says that they went on there under an arrangement with Swan, and Swan at one time seems to have had some conveyance of the property which perhaps gave him color of title; and if they did go on by his permission, that would be practically going on with the authority of Swan, and would, if in other respects sufficient, operate as an interruption at that time of the running of the twenty years; but as I said to you before, in order to affect the Pratt heirs and this plaintiff, it should have been known that that act was done by the authority of Swan, and that the parties were not mere squatters."

Exceptions are taken to these instructions because it is said in the first place, that in effect they required the jury to find that no

entry upon the land or occupation of it by the defendants or their grantor, would operate to defeat the plaintiff's disseizin, unless he had actual knowledge of such entry, and that it was made by authority of the defendants or their grantor.

In the earlier parts of the charge the presiding judge had explained to the jury the character of the occupancy and the nature of the acts of ownership on the part of the plaintiff which would enable her to acquire title by adverse possession. Among other things he said to the jury: "The rule upon that is very succinctly stated and I will read it: . . . . 'The essential use and occupation by one claiming adversely must be of such unequivocal a character as to reasonably indicate to the true owner, visiting the premises during the statutory period, that instead of suggesting the probable invasion of a mere occasional trespasser, they unmistakably show asserted and exclusive appropriation and ownership.'"

. . . . "It must be open, that is to say not clandestine, going upon the land in the night or stealing in at times when the true owner may have no knowledge of it, but it must be broad daylight as a man ordinarily manages his own property, so that anybody looking on, or the true owner looking on, would see and would understand that the man thus occupying was asserting some claim; there need not be any words necessarily, but enough to put the true owner upon the inquiry what are you here for? Are you claiming something, to induce him to assert his rights if he had any?" He then told the jury in substance, in the instructions excepted to, that the same rule should be applied in determining whether the acts of ownership and occupancy on the part of the defendants or their grantor, were sufficient to interrupt the plaintiff's possession.

It is contended by the plaintiff that the instructions of which the defendants complain should be construed in connection with the prior explanations thus expressly adopted, and also with reference to all other parts of the charge relating to the same question; and that when so construed they will be found in substantial accord with the prevailing rule upon this subject and not fairly amenable to the criticism of the defendants.

In Wood on Lim. of Actions, § 270, the principle is thus stated: "An entry by the legal owner upon the land breaks the continuity of an adverse possession when it is made openly with the intention of asserting his claim thereto, and is accompanied with acts upon the land which characterize the assertion of title or ownership; and a mere naked entry which is made for the purpose of ascertaining whether or not there is any adverse occupancy, is not sufficient to break or interrupt the possession. The entry must be made openly with the purpose of ascertaining his claim thereto, and must be accompanied by acts of ownership which characterize and effectuate the claim." See also Buswell on Lims. & Ad. Poss. § 274.

In *Robinson* v. *Swett*, 3 Maine, 310, it is said: "An entry into land to purge a dissezin should be made with that intention; and such intention should be sufficiently indicated either by the act itself or by words accompanying the act." In *Peabody* v. *Hewett*, 52 Maine, 33, the instruction to the jury was as follows:

"If within twenty years after Gregory first disseized Peabody, the heirs of the latter or their agent duly authorized, went upon the premises with the intent of making the entry, and they then and there disclosed to Gregory that they came for such purpose, it would be a legal entry."

In *Burrows* v. *Gallup*, 32 Conn. 493, the court said: "When a party is once dispossessed, it is not every entry upon the premises without permission that would disturb the adverse possession. He may tread upon his own soil and still be as much out of the possession of it there as elsewhere. He must assert his claim to the land, perform some act which would reinstate him in possession, before he can regain what he has lost. It is evident therefore that an entry by stealth, under circumstances that go to show that the party claimed no right to enter, would not be sufficient to break the continuity of exclusive possession in another."

In *Wing* v. *Hall*, 47 Vt. 182, the rule is thus stated: "An entry upon land in the posssession of another, in order to work a legal interruption of such possession, must be made under such circumstances as to enable the party in possession, by the use of rea-

sonable diligence, to ascertain the right and claim of the party making the entry."

So in *Altemas* v. *Campbell*, 9 Watts, 28, Gibson, C. J., said: "The effect of an entry, it is agreed, depends upon the intent of it, expressed by words or intimated by an act equally significant. I would say in a few words that there must be an explicit declaration or an act of notorious dominion by which the claimant challenges the right of the occupant, or it cannot perhaps be better defined than by saying that the entry must bear on the face of it an unequivocal intent to resume the actual possession." See also Am. & Eng. Encyl. of Law (2 Ed) Vol. 1, p. 836, under "Nature of re-entry required."

It has been seen, however, in the case at bar that after reading to the jury the correct rule that the occupancy should be so open and notorious and of such an unequivocal character as to "reasonably indicate" to the true owner an assertion of dominion and ownership, the learned judge thereafter, inadvertently stated the rule more strongly against the defendants, as follows:

"It would need to be something which was brought home in some way to the senses, the eyes or ears, of the party who was in possession claiming adversely, which would indicate to him that the owner was intending to assert his rights as against him."

"As I said to you before, in order to affect the Pratt heirs and this plaintiff, it should have been known that the act was done by the authority of Swan, and that the parties were not mere squatters."

This statement must have been received by the jury as a final interpretation of the rule which had been read to them. Under this instruction the jury could hardly have failed to understand that they were required to find that the acts of occupation by the agents or tenants of Swan, were not only of such a character as to "reasonably indicate" an assertion of title, but that the plaintiff had actual knowledge that they "were done by the authority of Swan."

This requirement of actual knowledge on the part of the plaintiff that such occupants were acting under the authority of Swan,

imposed upon the defendants too heavy a burden of proof. No authority has been brought to the attention of the court which goes to the extent of that requirement. If the acts of occupation emanate from the record owner in assertion of his title, and are of such a character as to afford reasonable notice of such claim of ownership, it is not essential that the party claiming by adverse possession should have actual knowledge at the time that the acts of occupation were authorized by the record owner. It would be a task of great difficulty and in most cases practically impossible for a land-owner to prove such actual knowledge. It is sufficient if in such a case it appears that by the exercise of reasonable diligence such actual knowledge might have been obtained. The explicit statement that the plaintiff must be shown to have had such actual knowledge must, therefore, be deemed error.

*Exceptions sustained.*