MARGARET CARNEY *vs.* JAMES HENNESSEY ET UX.

Third Judicial District, New Haven, June Term, 1901.
ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

The parties, who owned adjoining city lots under titles from a common grantor, were at issue as to the location of the boundary line. The defendants also claimed to have acquired title to the strip in dispute by adverse possession, and that the plaintiff's grantors were ousted of possession when their deeds were delivered. *Held* that a witness who had lived upon and was familiar with the plaintiff's premises might testify who occupied and used the land in controversy. Such a question is not objectionable as calling for a conclusion of the witness as to what somebody else did.

After a *prima facie* case of agency has been made out, the acts and admissions of the agent, acting within the scope of his authority, are admissible in evidence against the principal, whether actually known to the latter or not.

A landowner may be presumed to have knowledge of the open, visible and exclusive possession of his land by another, without license or consent, which is continued uninterruptedly for a period of fifteen years.

Nor is it necessary, under such circumstances, that the adverse possession be taken and held under a claim of title or ownership.

General Statutes, § 1368, provides that no entry upon lands shall be made but within fifteen years next after the right or title accrues; but that a minor may make such entry or bring an action at any time within five years next after becoming of age. *Held* that the statute began to run when the owner of the land was in fact disseised, whether under a disability or not; but that where a statutory disability existed an additional time was allowed after its removal.

Where the amount of costs recoverable has been settled by the judgment of the trial court, an appeal therefrom is necessary to a review of that question.

Argued June 12th—decided July 23d, 1901.

ACTION in the nature of trespass *qu. cl. fr.*, brought to the Court of Common Pleas in New Haven County and tried to the jury before *Hubbard, J.;* verdict and judgment for the plaintiff for $1 damages, and appeal by the defendants for alleged errors in the rulings and charge of the court. *Error and new trial granted.*

The plaintiff filed a bill of exceptions for alleged errors of the court in excluding certain evidence and in limiting the plaintiff's costs to one dollar.  *No error on plaintiff's exceptions.*

The case is sufficiently stated in the opinion.

*George E. Beers* and *Frank S. Bishop,* for the appellants (defendants).

*Charles S. Hamilton,* for the appellee (plaintiff).

TORRANCE, J.    The plaintiff and defendants are adjoining proprietors of land in New Haven fronting westerly on State Street and running east to Olive Street.    The plaintiff owns the north lot and the defendants the south lot.    The dispute between them relates to the question whether the boundary line, between said lots, runs along the outside face of the southerly wall of the brick building on plaintiff's land, as claimed by the defendants, or whether it runs about a foot and a half, more or less, southerly of the face of said wall, as claimed by the plaintiff.    Both lots were owned as one by Joseph Fairchild in 1874, and in October of that year he conveyed the north lot to his daughter Mrs. Easton.    She died in 1876, and the lot came then by descent to her two minor daughters, Josephine and Mary.    Josephine came of age in 1888, and Mary in 1889 or 1890; and after this, in November, 1890, they conveyed the lot to Gallagher, who immediately conveyed it to Forsyth, who in 1892 conveyed it to the plaintiff.    Joseph Fairchild died testate in 1881, leaving other land of his on State Street, which included the south lot now owned by the defendants, in equal shares to his five sons; and said south lot, by mesne conveyances, finally came into the ownership and possession of the defendants in March, 1891.    Both parties claimed to own the *locus in quo* under their respective chain of deeds produced in evidence; and in addition to this the defendants claimed (1) that they owned it by adverse possession; and (2) that when the deeds of the daughters of Mrs. Easton, of Gallagher and of Forsyth

were delivered, as hereinbefore stated, the grantors in those deeds were ousted of possession of the *locus in quo*. These claims of each party were denied by the other. The evidence produced by each party in the court below tended to prove their respective claims.

The reasons of appeal are based mainly upon alleged errors of the court in its rulings upon evidence, and in its instructions to the jury with reference to the claims of the defendants. These reasons are quite numerous, but, in the view here taken of the case, it will be necessary to consider only a few of the more important of them.

The defendants claimed that at some time before 1881, and after the conveyance of the north lot to Mrs. Easton, a fence was built from the southeast corner of her house to Olive Street; that said fence had remained there up to the time this suit was brought; and that the defendants and their predecessors in title, from the time said house and said fence were built, and for more than fifteen years before the bringing of this suit, had been in the exclusive and adverse possession of all the land south of said brick house and said fence. In support of this claim the defendants offered Mrs. Hayes as a witness. Having testified that she lived in the house now owned by the plaintiff from 1877 to 1881, and that when she went there first the fence aforesaid was then standing, she was asked this question: "During the life of Mr. Joseph Fairchild will you state who, if any one, made use of the land south of the fence." The evidence sought for by this question was claimed as tending to prove, (1) adverse possession of the defendants as claimed, (2) the fact that plaintiff's grantor was ousted of possession at the time the deed to the plaintiff was delivered, and (3) the practical construction put by the parties upon the deeds, the descriptions in which, as to the exact location of the boundary line in question, the defendants claimed, were upon the evidence uncertain and ambiguous. This question was objected to and excluded, on the ground "that it calls for a conclusion of the witness as to what somebody else did, and does not call for any act that she did."

This objection should have been overruled. Assuming, as we should upon this record, that the answer would have been responsive to the question, we think the evidence was clearly admissible for all the purposes for which it was offered, and that its exclusion under the circumstances was harmful error.

The defendants offered evidence and claimed to have proved that the plaintiff, since her purchase of the north lot, had resided thereon only a part of the time, and that the care of the place had been entrusted by her to her brother, who was authorized to and did act as her agent in caring for it, paying taxes and assessments thereon, and having general charge of it as her general agent. In view of this evidence and claim, the defendants offered evidence of certain acts and admissions claimed by them to have been made by this agent during, and within the scope of, his agency. The court excluded the evidence. The ground of exclusion, so far as it is stated in the record, is that it did not appear that the plaintiff had any actual knowledge of the claimed acts and admissions of her agent. For aught that appears upon the record, the court was satisfied that a *prima facie* case of agency had been made out by the defendants, for it does not exclude the offered evidence on that ground, but simply on the ground that the plaintiff was not bound by the acts and admissions of her agent unless she had knowledge of them.

This, clearly, was not a sufficient ground for excluding the offered evidence; for it is elementary law that if her brother was her agent, engaged in executing an authority she had conferred upon him, his acts and declarations while so doing, relating to her business and within the scope of his authority, were admissible against her, whether known to her in fact or not. It may be that the court intended to exclude this evidence on the ground that the agency had not been sufficiently shown, but if so, that is not the ground stated.

The defendants complain of the charge of the court to the jury with reference to the question of adverse possession. They say that the jury, in divers parts of the charge were told, in substance, (1) that such adverse possession must

have been known to and acquiesced in by the owner, or must have been so far notorious as to have been presumptively within the knowledge of the owner; and (2) must have been held by the defendants and those under whom they claim, under a claim of title, or with a specific intent to claim the land as their own.

We think the record bears out these claims of the defendants, and that the charge, as a whole, upon these points, was liable to mislead the jury. If the owner of real estate is ousted of possession, and the ouster continued uninterruptedly for a period of fifteen years, by an open, visible, and exclusive possession in another, without the license or consent of the owner, such possession is presumed to be with the knowledge of the owner; *School District* v. *Lynch*, 33 Conn. 330; and the jury should have been told that such facts, if true, would constitute presumptive notice of adverse possession to the owner. *Wilson* v. *Williams' Heirs*, 52 Miss. 487, 493. Nor was it correct to tell the jury that the adverse possession of the defendants and those under whom they claim, must have been made under a claim of title, or under a claim that the land was their own. *Bryan* v. *Atwater*, 5 Day, 181; *French* v. *Pearce*, 8 Conn. 439, 442; *Johnson* v. *Gorham*, 38 id. 513.

: The defendants offered evidence to prove and claimed they had proved an ouster from the *locus in quo*, either of Mrs. Easton or of her daughters during their minority, and complain of the charge of the court with respect to the running of the statute of limitations against the minor daughters. Upon this point the court charged as follows: "If you should find that there has been any sufficient adverse possession and occupation of that property amounting to an ouster of the plaintiff, or a predecessor in title of the plaintiff, but should find that such adverse possession began after the Easton girls . . . came to have a title to that property . . . then you are not to regard the fifteen years of the statute as beginning to run until the date of the transfer from these children to a successor in title, their grantee. Their infancy constitutes a disability which suspends the operation of the statute, if their right of entry accrued during their minority.

. . . . But if you find . . . any adverse possession suffi-cient to amount to the requirements of the law, and that it first occurred while the daughters of Mrs. Easton were minors, why, then the practical consideration is that the stat-ute of fifteen years does not begin to run until they make a conveyance of their interest, which I may say would make it impossible for these defendants to have gained their title by the necessary, continuous occupation for fifteen years; this deed having been given by these daughters of Mrs. Easton in 1890, there would be no question on this subject of ad-verse possession; it would be decisive if you were to find that, though there were adverse possession, the statute did not begin to run, under the instructions I have given you, until the deed from " the two daughters.

The title to the north lot devolved by descent upon the minor daughters in March, 1876. They, when of full age, conveyed to Gallagher on the 20th of November, 1890. By this charge the jury were told, in effect, that if the defend-ants and those under whom they claimed, had ousted the minor daughters in April, 1876, and had continued such ous-ter down to the date of this suit in August, 1898, they could not thereby legally acquire title to the *locus in quo*; in other words, that under such circumstances the defendants could acquire no title until they had continued the ouster for fif-teen years after the deed to Gallagher in November, 1890.

That, clearly, is not the law. The court told the jury that if the adverse possession began after the daughters got title, and during their minority, the statute did not run against them while minors. This is not true. " The statute always begins to run against a man the moment he is disseized, whether he is under a disability or not: all the difference is, that an additional time is allowed where a disability exists, after the removal of it." SWIFT, Ch. J., in *Bunce* v. *Wolcott*, 2 Conn. 27, 33; *Griswold* v. *Butler*, 3 id. 227. This part of the charge was thus clearly wrong, and may well have mis-led the jury to the prejudice of the defendants upon a ma-terial point in the case. For this, and the other errors already considered, we think a new trial should be granted; and in

this view of the case we deem it unnecessary to consider the other assignments of error, as most if not all of them appear to be either not well founded, or not important enough to merit further consideration.

A bill of exceptions allowed by the trial court for the plaintiff, remains to be considered. The bill presents two questions: The first relates to the admissibility of the evidence of Henry C. Davis, and the second to the rulings of the trial court upon the question of costs.

Davis, a witness for the plaintiff, testified to declarations made by Joseph Fairchild, as to where he *intended* to draw the line between the defendants' lot and the plaintiff's lot; and because it was simply a declaration of what he intended to do, the court excluded it. Under the circumstances we think the ruling was correct.

The plaintiff took no appeal from the judgment of the trial court upon the question of costs, and in the absence of such appeal the second question presented by the bill of exceptions cannot be considered. *Watson* v. *New Milford*, 72 Conn. 561–567.

There is error and a new trial is granted.

In this opinion the other judges concurred.