JOHN J. AHERN *vs.* THE TRAVELERS INSURANCE COMPANY.

First Judicial District, Hartford, March Term, 1928.
WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, JS.

(1)

Argued March 8th—decided June 14th, 1928.

*Benedict E. Lyons,* for the appellant (plaintiff).

*Allan· E. Brosmith,* with whom was *Warren Maxwell,* for the appellee (defendant).

HAINES, J.   The plaintiff appealed under the provisions of General Statutes, §§5828 to 5831, and upon the filing of a finding of facts moved for a correction thereof, but failed to annex to his motion any exceptions to the finding.   Instead he waited until the court filed its decision on the motion and filed exceptions to that decision.   This was twelve days after the finding was filed.   He now complains that he was prevented from filing the entire evidence in the case under the provisions of General Statutes, §5832, which limit him to one week from notice of the finding.   His error lay in excepting to the court's decision upon his motion. Exceptions are directed to the finding itself and should be annexed to and filed contemporaneously with the

motion to correct, together with such evidence as is claimed to be material to the requests made.

If he had appealed under the provisions of General Statutes, §5832, no exceptions would have been required, but upon motion granted, and the entire evidence filed within one week, each objection to the finding could have been assigned as a reason of appeal. General Statutes, §§5830, 5832.

The appellant has no cause of complaint, since both methods of appeal cannot be pursued at the same time. The second method may only be adopted "in lieu of" the first. General Statutes, §5832.

Certain changes were made in the finding by the trial court after the motion to correct, and the essential facts now before us are as follows:

Plaintiff and defendant are owners of adjoining lots on the west side of Front Street in Hartford. The land of the former has a frontage of fifty-seven and one half feet, being exactly one half the frontage of a larger tract of one hundred and fifteen feet formerly owned by one Isaac Perkins. The defendant's land lies south of the plaintiff's, has a frontage of ninety-eight feet more or less, and for many years and until recently has been used as a lumber yard. Sheds for storage of lumber were maintained on the north side of the lot, the rear walls of which were just south of the plaintiff's south line, the distance varying from about sixteen inches on the east end to about three and three fifths inches on the west end. The narrow strip of land thus defined is the tract in dispute in this action.

For about thirty-seven years continuously, and up to 1926, the plaintiff's lot has been entirely enclosed on the north, east and west sides by fences, with only the north wall of the lumber sheds on the south side. It does not appear that the actual south line of plain-

tiff's lot was ever fenced. On the south side of this lot, at the front line, was a large gate, the south end of which was suspended from a post imbedded two inches in the corner of the shed, and when opened this gate was swung back and rested against the north wall of the shed. The gate was kept closed at night, but when opened it furnished an entrance from Front Street through a driveway which was in constant use along the south side of the lot to a garage, formerly a barn, at the west end of plaintiff's lot. This narrow strip between the driveway and the shed wall was used for parking and turning of vehicles as convenience required and for maintaining the gate. It was also used for garbage and ash cans, for side-boards and platforms of wagons, and used generally in connection with the teaming business. Clotheslines were strung from the house of the plaintiff to hooks in the north wall of the sheds, and when the latter were recently removed a post was set in this strip of land to support these lines. On the rear of the lot there was a space between the barn and the north wall of the lumber sheds, and in this was stored junk of all kinds, and one winter a truck was stored there. For a time there was a wagon shed on this lot, built with its rear against the wall of the lumber sheds. All these uses were made exclusively by the plaintiff or his predecessor in title, and it does not appear that the right to them was ever questioned till about the time of the present action. The only reasonable conclusion which can be reached is that the plaintiff claimed full ownership of this strip as against the world, and so construed his deed, which read "about 57½ feet." Such acts by themselves show the possession to have been actual, visible and notorious, exclusive, continuous and hostile, and would give the plaintiff title by adverse possession unless the running of the statute was shown by other

facts to have been effectively interrupted. *School District* v. *Lynch*, 33 Conn. 330, 334; *Stevens* v. *Smoker*, 84 Conn. 569, 574, 80 Atl. 788; *Lucas* v. *Crofoot*, 95 Conn. 619, 112 Atl. 165; *Hurlburt* v. *Bussemey*, 101 Conn. 406, 412, 126 Atl. 273. Though the plaintiff mistakenly believed he had title, his possession may still be adverse to the record owner. *Searles* v. *DeLadson*, 81 Conn. 133, 70 Atl. 589. It may also be adverse if exclusively possessed without claim of title. *Carney* v. *Hennessey*, 74 Conn. 107, 111, 49 Atl. 910; *Stevens* v. *Smoker*, 84 Conn. 569, 575, 80 Atl. 788.

The defendant contends there has been such an interruption because of the following facts: For many years the rear of the plaintiff's property was verbally leased to the managers of the lumber yard who occupied the defendant's lot, the plaintiff's lot being divided into two tracts for this purpose by a fence which was built about 1912 and shut the leased tract from the front one. This fence stood a short distance back of the plaintiff's house and extended entirely through the lot from the plaintiff's north fence, across the strip of land now in dispute to the north wall of the lumber sheds, and was thus built and maintained with the consent of the plaintiff and his predecessors. It does not appear that either party had access to the lot occupied by the other. The entrance from the lumber yard to this leased lot was through an opening cut in the rear wall of the lumber sheds, and the lessees used this rear lot, including that portion of the disputed strip within it, for the storage of lumber. It further appears that the eaves of the lumber sheds overhung this strip of land about seven inches, and that when repairs were needed to the north wall of the lumber sheds the workmen stood on the strip. The south line of plaintiff's lot was correctly shown on the city records, and street assessments south of plaintiff's line had been

in fact charged to and paid by the defendant, though it does not appear that either party recognized that these charges covered the strip in question.

On all the foregoing facts the trial court decided that the plaintiff had not acquired title by adverse possession, holding (a) that the entire strip must be treated as indivisible and (b) that the use made of it by the defendant was not shown to be by plaintiff's consent rather than of right.

While entry on the disputed tract by the record owner may breach the continuity of a claimant's possesion and be fatal to the maturing of a title by adverse possession, it is not every entry which will have that result. None of the entries claimed were other than casual or incidental; they were at best occasional and temporary intrusions, and there was no suggestion that they were made with intent to claim title to the land, nor was there anything to put the plaintiff on notice of the claim of the record owner. There was in fact no actual interruption of the plaintiff's possession nor any attempt to test the plaintiff's right to possession. Merely going upon the land is not enough. The owner must assert his claim, or do some act that would reinstate him in possession, before he can regain what he has lost. *Burrows* v. *Gallup,* 32 Conn. 493, 499; *First Baptist Church of Sharon* v. *Harper,* 191 Mass. 196, 208, 77 N. E. 778; *Murphy* v. *Commonwealth,* 187 Mass. 361, 371, 73 N. E. 524; *Bowen* v. *Guild,* 130 Mass. 121, 123; *Batcheler* v. *Robbins,* 93 Me. 579, 584, 45 Atl. 837; *Peabody* v. *Hewett,* 52 Me. 33; *New Shoreham* v. *Ball,* 14 R. I. 566; 5 R. C. L. p. 723, §39; 3 Thompson on Real Property, §2529; 2 Wood on Limitations (4th Ed.) §270.

Entry "must not be of a casual or secret character but must be either known to the occupant or 'be made under such circumstances as to enable the party in

possession, by the use of reasonable diligence, to ascertain the right and claim of the party making the entry,' and thus enable him to resort to legal remedies for its protection." 2 Corpus Juris, p. 96, §118; *McCombs* v. *Rowan,* 59 Pa. St. 414, 418; *Illinois Steel Co.* v. *Budzisz,* 115 Wis. 68, 86, 90 N. W. 1019.

"When a party is once dispossessed it is not every entry upon the premises without permission that would disturb the adverse possession. He may tread upon his own soil and still be as much out of possession of it there as elsewhere. He must assert his claim to the land, perform some act that would reinstate him in possession, before he can regain what he has lost. It is evident therefore that an entry by stealth, under circumstances that go to show that the party claimed no right to enter, or an entry for other purposes than those connected with a right to enter, would not be sufficient to break the continuity of exclusive possession in another." *Burrows* v. *Gallup,* 32 Conn. 493, 498, 499.

"It may be observed in this connection that there is close analogy between the acts necessary to interrupt an adverse possession and those necessary to constitute open and notorious possession for the purposes of acquiring title by adverse possession." 2 Corpus Juris, p. 97.

The tenants of the defendant's adjoining lot desired to use a part of it as an adjunct to their lumber business. In leasing it from the plaintiff it must be assumed, in the absence of any evidence to the contrary, that the lessees took the tract as they saw it, and the strip of land now in dispute was within the apparent limits of the plaintiff's tract. We cannot reasonably suppose, as the facts stand, that this was not the honest intention of both lessor and lessee. Up to the time of the lease, the plaintiff was in open, noto-

rious and exclusive possession of the strip. The defendant had never asserted a claim to it in opposition to the plaintiff. When the 1912 lease was made, it built a fence across it only with the consent of the plaintiff. Only after the plaintiff had given the lease, did the defendant open an entrance through the shed and enter upon the strip and use it, and this use was the same use to which he put all the rest of the land in which he had thus acquired a leasehold interest, and the use ended when the lease expired. The defendant made no claim of ownership during all the years of the plaintiff's possession and use, and the record is bare of any suggestion that this defendant or any of its predecessors ever intended to assert a right to this strip of land or actually knew they had the record title to it. On the contrary, the acceptance of the lease year after year, under the circumstances referred to, was a clear recognition that the lessee's right to enter upon and use this strip of land was derived solely from the lease.

The occasional use of the strip by defendant's workmen for the purpose of repairing the north wall of the shed, and the overhang of the eaves might, so far as appears, have been by consent of the plaintiff, or if not, might constitute mere trespasses, or perhaps eventually create certain easements, but in the way they were exercised they cannot be said to be assertions of title so as to interrupt the running of the statute. *Goodwin* v. *Bragaw*, 87 Conn. 31, 35, 86 Atl. 668.

It is unnecessary to discuss the question whether the strip must be considered as a unit or whether title by adverse possession could have been obtained to that portion from which the defendant was barred by the fence without reference to the portion which was used by the defendant.

There is error, the judgment is reversed and the Superior Court is directed to enter judgment for the plaintiff.

In this opinion WHEELER, C. J., and BANKS, J., concurred; MALTBIE and HINMAN, Js., dissented.